TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
J. BRETT GROSKO, Senior Trial Attorney (Md. Bar)
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7369
Washington, DC 20044-7369
Ph: 202-305-0342/Fax: 202-305-0275
brett.grosko@usdoj.gov

*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT
DISTRICT OF OREGON**

| | | |
|---|---|---|
| N.W. ENVIRONMENTAL ADVOCATES, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No. 3:21-cv-1591 |
| U.S. NATIONAL MARINE FISHERIES SERVICE, *et al.*, | ) ) ) ) | |
| *Defendants*. | ) ) ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO SUPPLEMENT THE
ADMINISTRATIVE RECORD, CLARIFY THE SCOPE OF REVIEW, AND FOR
LEAVE TO TAKE DISCOVERY**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 2

    I.      MOTION TO SUPPLEMENT .................................................................. 2

    II.    JUDICIAL NOTICE ................................................................................ 4

FACTUAL BACKGROUND ............................................................................................... 4

ARGUMENT ........................................................................................................................ 6

    I.      DEFERRING A DECISION ON PLAINTIFF'S MOTION WOULD
         SIGNIFICANTLY PREJUDICE DEFENDANTS. ....................................... 6

    II.    THE COURT SHOULD NOT CONSIDER EXTRA-RECORD EVIDENCE. ............. 8

    III.   PLAINTIFF'S ALTERNATIVE REQUEST FOR JUDICIAL NOTICE SHOULD BE
         DENIED. ............................................................................................ 15

    IV.   THE COURT SHOULD DECLINE TO ALLOW DISCOVERY. ............................. 16

        A.    Claims Brought Under the ESA are Reviewed Under APA Record of Review
            Principles .......................................................................................... 17

        B.    *Kraayenbrink* and *Washington Toxics* Do Not Overrule Controlling Precedent ...... 21

CONCLUSION .................................................................................................................... 27

i

## TABLE OF AUTHORITIES

**CASE**                                                                                  **PAGE**

*Alegre v. United States*,
  No. 16-cv-2442, 2021 WL 4934982 (S.D. Cal. July 29, 2021) ................................................ 10

*All. for Wild Rockies v. Probert*,
  412 F. Supp. 3d 1188 (D. Mont. 2019) .................................................................................... 4

*Audubon Soc'y of Portland v. Zinke*,
  No. 1:17-cv-00069, 2017 WL 2172439 (D. Or. May 16, 2017) ..................................... 7, 9, 12

*Bark v. Northrop*,
  2 F. Supp. 3d 1147 (D. Or. 2014).............................................................................................. 9

*Bartell Ranch LLC v. McCullough*,
  No. 3:21-cv-00080, 2021 WL 6118738 (D.Nev. December 27, 2021).................................... 15

*Cabinet Mountains Wilderness v. Peterson*,
  685 F.2d 678, (D.C. Cir. 1982) ............................................................................................... 19

*Chandler v. Roudebush*,
  425 U.S. 840 (1976) ................................................................................................................. 18

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ................................................................................................................... 3

*City of Sausalito v. O'Neill*,
  386 F.3d 1186 (9th Cir. 2004)...................................................................................... 19, 25, 26

*Ctr. for Biol. Div. v. Jewell*,
  No. 12-cv-02296, 2014 WL 116408 (D. Ariz. Jan. 13, 2014) ................................................... 9

*Ctr. for Biological Diversity v. Skalski*,
  61 F. Supp. 3d 945 (E.D. Cal. 2014)........................................................................................ 13

*Ctr. for Biological Diversity v. Wolf*,
  447 F. Supp. 3d 965 (D. Ariz. 2020)........................................................................................ 23

*Delgadillo v. Kijakazi*,
  No. 20-cv-56211, 2022 WL 301548 (9th Cir. Feb. 1, 2022) ................................................ 4, 15

*Dickinson v. Zurko*,
  527 U.S. 150 (1999) ................................................................................................................ 18

*Fence Creek Cattle Co. v. U.S. Forest Service*,
  602 F.3d 1125 (Apr. 26, 2012)................................................................................................ 9

*Greater Yellowstone Coal., Inc. v. Servheen*,
  665 F.3d 1015 (9th Cir. 2011)................................................................................................ 19

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*,
  383 F.3d 1082 (9th Cir. 2004)................................................................................................ 19

*In re Delta Smelt Consol. Cases*,
  No. 1:09-cv-1053, 2010 WL 2520935 (E.D. Cal. June 21, 2010) .................................. 9, 10, 12

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
  379 F. Supp. 2d 1071 (N.D. Cal. 2005) .................................................................................. 8

*Karuk Tribe v. U.S. Forest Service*,
  681 F.3d 1006 (9th Cir. 2012)........................................................................................ 15, 20, 21

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005)................................................................................................. 4

*Morgan v. United States*,
  304 U.S. 1 (1938) ................................................................................................................... 2

*N.W. Env. Advocates v. Fish and Wildlife Service*,
  No. 18-cv-1420, 2019 WL 6977406 (D. Or., Dec. 20, 2019) ..................................................... 4

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
  551 U.S. 644 (2007) ............................................................................................................... 21

*Newton Cnty. Wildlife Ass'n v. Rogers*,
  141 F.3d 803 (8th Cir. 1998).................................................................................................. 19

*Ninilchik Traditional Council v. United States,*
   227 F.3d 1186 (9th Cir. 2000) ................................................................. 17, 18, 20

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs,*
   817 F. Supp. 2d 1290 (D. Or. 2011) ....................................................... 23

*Occidental Eng'g Co. v. INS,*
   753 F.2d 766 (9th Cir. 1985) ................................................................. 16

*Olenec v. Nat'l Marine Fisheries Serv.,*
   765 F. Supp. 2d 1277 (D. Or. 2011) ....................................................... 23

*Oregon Natural Desert Ass'n v. Kimbell,*
   593 F. Supp. 2d 1217 (D. Or. 2009) ....................................................... 24

*PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology,*
   511 U.S. 700 (1994) ............................................................................... 5

*Rio Grande Silvery Minnow v. U.S. Bureau of Reclamation,*
   601 F.3d 1096 (10th Cir. 2010) .............................................................. 19

*Rybachek v. EPA,*
   904 F.2d 1276 (9th Cir. 1990) ............................................................... 4

*San Luis & Delta-Mendota Water Authority v. Jewell,*
   747 F.3d 581 (9th Cir. 2014) ................................................................. 9

*San Luis & Delta-Mendota Water Authority v. Locke,*
   776 F.3d. 971 (9th Cir 2014) ................................................................. 12

*Save the Colorado v. U.S. Dep't of the Interior,*
   517 F. Supp. 3d 890 (D. Ariz. 2021) ...................................................... 2

*Seattle Audubon Society v. Norton,*
   2006 WL 1518895 (W.D. Wash., May 25, 2006) .................................... 25

*Seattle Audubon Soc'y v. Lyons,*
   871 F. Supp. 1291 (W.D. Wash. 1994) .................................................. 13

iv

*Sequoia Forest Keeper v. La Price*,
    270 F. Supp. 3d 1182 (E.D. Cal. 2017) ............................................................... 13

*Sierra Club v. Glickman*,
    67 F.3d 90 (5th Cir. 1995) ................................................................................... 19

*Sierra Club v. McLerran*,
    No. 11-1759-RSL, 2012 WL 5449681 (W.D. Wash. Nov. 6, 2012) ..................... 24

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
    100 F.3d 1443 (9th Cir. 1996) ............................................................................... 3

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ................................................................................. 3

*United States v. Carlo Bianchi & Co.*,
    373 U.S. 709 (1963) ............................................................................................. 17

*United States v. Morgan*,
    313 U.S. 409 (1941) ............................................................................................... 3

*United States v. Parker*,
    651 F.3d 1180 (9th Cir. 2011) ............................................................................. 21

*Vill. of False Pass v. Clark*,
    733 F.2d 605 (9th Cir. 1984) ............................................................................... 19

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*,
    435 U.S. 519 (1978) ............................................................................................... 3

*W. Watersheds Project v. Kraayenbrink*,
    538 F. Supp. 2d 1302 (D. Id. 2008) ..................................................................... 22

*Washington Toxics Coalition v. EPA*,
    413 F.3d 1024 (9th Cir. 2005) ..................................................................... 2, 20, 21

*Webster v. Doe*,
    486 U.S. 592 (1988) ............................................................................................. 18

*Western Watersheds Project v. Kraayenbrink,*
  632 F.3d 472 (9th Cir. 2011)................................................................... 2, 20, 22, 25


**Statutes**

5 U.S.C. § 559................................................................................................ 18

5 U.S.C. § 704................................................................................................ 21

5 U.S.C. § 706.......................................................................................... passim

16 U.S.C. § 1540(g) .................................................................................. 18, 23

33 U.S.C. § 1313(a) ......................................................................................... 4

33 U.S.C. § 1313(c)(1)...................................................................................... 5

33 U.S.C. § 1313(c)(2)(A) ................................................................................ 5

33 U.S.C. § 1313(c)(3)................................................................................... 5, 6

33 U.S.C. § 1313(c)(4)(A) ................................................................................ 6

33 U.S.C. § 1313(d)(1)(C) ................................................................................ 6

33 U.S.C. § 1313(d)(2) ..................................................................................... 6

16 U.S.C. § 3117(a) ....................................................................................... 17


**Rules**

Fed. R. Civ. P. 26(1)(A)................................................................................... 16

Fed. R. Civ. P. 26(1)(B)................................................................................... 16

Fed. R. Civ. P. 26(a)(B)(i) ........................................................................... 15

Fed. R. Civ. P. 26(b) .................................................................................... 16

Fed. R. Evid. 201(b) ...................................................................................... 4

## Regulations

40 C.F.R. § 130.2(g)-(h) ................................................................................ 6

40 C.F.R. § 130.3 .......................................................................................... 5

40 C.F.R. § 131.5(2) ...................................................................................... 6

40 C.F.R. § 130.7(c)(1) .................................................................................. 6

40 C.F.R. § 130.7(d)(1) .................................................................................. 6

40 C.F.R. § 131.11(a) ................................................................................. 4, 6

40 C.F.R. § 131.11(c) ..................................................................................... 6

40 C.F.R. § 131.13 ........................................................................................ 5

40 C.F.R. § 131.20(a) .................................................................................... 5

40 C.F.R. § 131.21(a) .................................................................................... 6

40 C.F.R. § 131.5 .......................................................................................... 5

**INTRODUCTION**

Plaintiff brings claims alleging violations of Section 7 of the Endangered Species Act ("ESA") in connection with the Environmental Protection Agency's ("EPA") approval of Oregon's water quality criteria for temperature. In particular, Plaintiff challenges National Marine Fisheries Service's ("NMFS") November 2015 Biological Opinion ("BiOp") and EPA's reliance on that BiOp to comply with ESA Section 7.

On November 30, 2023, NMFS and EPA filed their respective Administrative Records for Plaintiff's claims. NMFS has since agreed to augment its Administrative Record in response to Plaintiff's requests. The agencies' Administrative Records include hundreds of documents spanning more than 59,000 pages. Collectively, these documents provide ample documentation for review of Plaintiff's claims. Nevertheless, Plaintiff seeks to have NMFS's Administrative Record supplemented with 27 additional documents, to submit an extra-record declaration of at least one purported, but unnamed, expert, along with their opening summary judgment brief, and take the deposition of an EPA's designated rebuttal experts. Through these requests, Plaintiff seeks to expand the scope of the Court's review beyond NMFS's and EPA's Administrative Records. Plaintiff's request to supplement NMFS's Administrative Record fails at the outset because Plaintiff does not attempt to show, as it must, that NMFS's extensive Administrative Record is insufficient for the Court's review. Moreover, even if it had done so, it additionally does not meet its burden to show that the documents to have added bring to light an entirely new subject matter that it maintains NMFS did not consider. As to its argument for discovery,

1

Plaintiff misconstrues *Washington Toxics Coalition v. EPA*, 413 F.3d 1024 (9th Cir. 2005) ("*Washington Toxics*"), and *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) ("*Kraayenbrink*"). As is established by the plain language of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, as well as controlling Supreme Court and Ninth Circuit precedent–their claim against EPA as an action agency is governed by the scope and standard of review provided by the APA, and discovery is not available in this matter. For these reasons, and the additional reasons that follow, the Court should confirm that this case is governed by the principles of the APA, and as such discovery is inappropriate and Plaintiff fails to carry their burden to supplement the records with extra-record evidence.

## STANDARD OF REVIEW

### I.    MOTION TO SUPPLEMENT

Judicial review in this case is governed by the record review principles embodied in the APA, 5 U.S.C. § 706. A court's task in cases like this one "is to assess the lawfulness of the agency's action based on the reasons offered by the agency. . . not to 'probe the mental processes' of agency decision-makers." *Save the Colo. v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 897 (D. Ariz. 2021) (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)). The focal point of judicial review is "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "The whole . . . record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (cleaned up).

Here, EPA and NMFS have compiled their Administrative Records, and certified their completeness. Dkts. 48, 49. Those certifications are entitled to a strong presumption of regularity. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The presumption of regularity reflects the judiciary's respect for a coordinate branch of government. *United States v. Morgan*, 313 U.S. 409, 422 (1941).

A motion to "supplement" the Administrative Record with extra-record documents that an agency did not consider should only be granted in limited circumstances. Ordinarily, if an agency's stated reasons for acting are "not sustainable on the administrative record made," then the matter should be "remanded to [the agency] for further consideration." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 549 (1978). Only in four exceptional cases may courts depart from the ordinary course and consider extra-record material in a record-review case: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (cleaned up). "The scope of these exceptions . . . is constrained, so that the exception does not undermine the general rule." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). The Ninth Circuit has clarified a reviewing court may admit extra-record evidence under this exception "only to

help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *N.W. Env. Advocates v. U.S. Fish and Wildlife Serv.*, No. 3:18-cv-01420-AC, 2019 WL 6977406, *7 (D. Or., Dec. 20, 2019) ("*NWEA v. FWS*") (citing *San Luis & Delta-Mendota Water Authority v. Locke,* 776 F.3d 971 (9th Cir. 2014)).

## II.    JUDICIAL NOTICE

Under Federal Rule of Evidence 201, courts may take judicial notice of "adjudicative" facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). In a case seeking review of agency action under the APA, a request for judicial notice "effectively ask[s] to supplement the record." *Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *1 (9th Cir. Feb. 1, 2022). "A party cannot circumvent the rules governing administrative record supplementation by asking for judicial notice." *Id.* (collecting cases); *see also All. for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1198 (D. Mont. 2019) (same); *Rybachek v. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (construing a request for judicial notice as a motion to supplement the record and rejecting the motion because "[j]udicial review of agency actions should generally be confined to the original record upon which the actions were based").

**FACTUAL BACKGROUND**

Section 303 of the Clean Water Act ("CWA") requires that all states adopt water quality standards and that EPA review and approve these standards. 33 U.S.C. § 1313(a), (c).  In addition to adopting water quality standards, states are required to review and revise standards

4

every three years. 33 U.S.C. § 1313(c)(1); 40 C.F.R. § 131.20(a). This public process, commonly referred to as the triennial review, allows for new technical and scientific data to be incorporated into the standards. *Id.*

The minimum requirements that must be included in the state standards are designated uses, criteria to protect the uses, and an antidegradation policy that protects existing uses, high-quality waters, and waters designated as "outstanding national resource waters." *See PUD No. 1 of Jefferson Cty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 705 (1994); *see also* 40 C.F.R. §§ 130.3, 131.3. In addition to these elements, the regulations allow for states to adopt discretionary policies affecting the application and implementation of water quality standards, such as allowances for mixing zones and variances from water quality standards. 40 C.F.R. § 131.13. These policies are also subject to EPA review and approval. *Id*.

CWA Section 303(c) requires that states submit all new or revised water quality standards officially adopted by each state to EPA for review and approval or disapproval before they may go into effect for use in CWA programs. 33 U.S.C. § 1313(c)(2)(A). The EPA reviews the standards to determine whether the standards meet the requirements of the CWA and EPA's water quality standards regulations. *Id.* § 1313(c)(3); 40 C.F.R. § 131.5. As to water quality criteria specifically, the EPA verifies that the state's adopted criteria are "based on sound scientific rationale" and "contain sufficient parameters or constituent to protect the designated

5

use." 40 C.F.R. §§ 131.11(a); 131.5(2). The EPA then formally notifies the state of these results. *Id.* § 131.21(a).[1]

Every two years, States must submit a list of impaired waters that do not meet water quality standards, known as a "303(d) List", to EPA for review. 40 C.F.R. § 130.7(d)(1). If a waterbody is included on a 303(d) List, the State must establish Total Maximum Daily Loads ("TMDLs"). *See* 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(c)(1). TMDLs identify the maximum amount of a pollutant that can be added to a waterbody from all sources (the loading capacity) and still attain applicable water quality standard. 33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1).[2]

## ARGUMENT

### I.    DEFERRING A DECISION ON PLAINTIFF'S MOTION WOULD SIGNIFICANTLY PREJUDICE DEFENDANTS.

As a preliminary matter, the Court should reject Plaintiff's request that the Court defer ruling on its Motion until after the parties begin briefing summary judgment. Dkt. 65 ("Motion")

---

[1] If EPA determines that any such revised or new water quality standard is not consistent with the applicable requirements of the CWA and EPA's implementing regulations, it is required to specify the disapproved portions and the changes needed to meet the requirements. 33 U.S.C. § 1313(c)(3). The state is then given an opportunity to make appropriate changes. *Id*. If the state does not adopt the required changes, EPA must promulgate Federal regulations to replace those disapproved portions. 33 U.S.C. § 1313(c)(4)(A).

[2] TMDLs also apportion a waterbody's loading capacity to pollution sources, including point sources (wasteload allocations) and nonpoint sources (loading allocations). *See* 40 C.F.R. § 130.2(g)-(h). In addition, TMDLs must include a margin of safety that accounts for any lack of knowledge concerning the relationship between effluent limitations and water quality. *See* 33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1).

6

at 19-20. For starters, Plaintiff has waived the right to make such a request by negotiating the schedule for its Motion to complete or supplement the administrative record. On July 20, 2023, the parties moved this court for entry of a briefing schedule. Dkt. 40. There, Plaintiff represented that it was unsure whether there would be a need for it to file a motion "regarding whether the administrative records in this case needs completion *and/or supplementation*." *Id.* at 3 (emphasis added). Thus, the Plaintiff and Defendants understood that any record motion would address both completion and supplementation. Then, on August 8, 2023, at the parties' request, the Court set deadlines for (a) Defendants to lodge the administrative record; (b) Plaintiff to notify the Defendants concerning any record issues, including "scope of review and/or sufficiency" of the administrative record (the conferral period); and (c) Plaintiff to file any "motion(s) challenging the adequacy of the AR(s) and/or scope of review." 08/08/23 Min. Order. The Court's broad language confirmed the parties' understanding. Nor has Plaintiff ever suggested that it may require an additional opportunity to brief record issues. It should not be permitted to undermine this shared understanding now.[3]

Plaintiff also made additional representations confirming that its record motion would encompass any documents it thought should be included to "complete" and also to "supplement"

---

[3] Plaintiff cites to two cases where the court allowed the plaintiff to file motions to supplement the record concurrently with its summary judgment motion. Motion at 19-20 (citing *Audubon Soc'y of Portland, Or. v. Zinke*, No. 1:17-cv-00069, 2017 WL 2172439, at *1–2 (D. Or. May 16, 2017) and *Xerces Soc'y for Invertebrate Conservation, et al. v. Shea, et al.*, No. 3:22-cv-00790 (D. Or. Dec. 9, 2022) (Dkt. 27). Those decisions are irrelevant because here, the parties and the Court have already declined to take that procedural route. Dkts. 40, 57, 59-62.

7

the record. On June 17, 2024, Plaintiff filed a motion to set a briefing schedule concerning any "issues with Defendants' Administrative Records that the Parties were unable to resolve during the conferral period . . . ." Dkt. 57 at 2. It proposed that it would file such record motion on July 26, 2024. *Id.* (later extended to September 6, 2024, at Plaintiff's request)*.* Plaintiff said this filing would constitute its opportunity to file an "Administrative Record motion." *Id.* Plaintiff's request in its September 6, 2024, motion–that the Court delay ruling on whether to supplement the administrative record and to allow further record arguments to be made in dispositive motions - is at odds with its prior representations. The Court should find Plaintiff waived its opportunity to file a later motion to supplement NMFS's Administrative Record with its motion for summary judgment and not allow Plaintiff to arrogate to itself the opportunity to file a second motion on this issue.

Second, providing Plaintiff a second opportunity to refile a second motion to supplement NMFS's Administrative Record would significantly prejudice Defendants by depriving then a settled understanding of the Administrative Records' content. The Court should provide clarity as to the content of the Administrative Records now, in advance of summary judgment briefing. It should not leave the matter until the parties are briefing dispositive motions.

## II.    THE COURT SHOULD NOT CONSIDER EXTRA-RECORD EVIDENCE.

The Court should deny Plaintiff's request to have NMFS's Administrative Record supplemented with 27 documents, for two primary reasons. First, "a party seeking to invoke [any of] the *Lands Council* exceptions must first show the administrative record is inadequate to

effectively review the challenged action." *NWEA v. FWS*, 2019 WL 6977406, at \*7-\*8; *see also*

*Karuk Tribe of Cal. v. U.S. Forest Serv.*, 379 F. Supp. 2d 1071, 1087 (N.D. Cal. 2005) (for

"extra-record material to be considered, a plaintiff must first make a showing that the record is

inadequate."). Plaintiff has not done so here. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602

F.3d 1125, 1131 (9th Cir. 2010) (denying consideration of extra-record evidence where plaintiff

failed to "show that the additional materials sought [were] necessary to adequately review the

Forest Service's decision").[4] Here, NMFS's Administrative Record, which encompasses over

57,000 pages of studies, agency reports, and other documents, is more than adequate for the

Court's review. Dkt. 48-1, ¶ 5. And Plaintiff has not attempted to show that NMFS's record is

---

[4] *See also San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014) (the plaintiff is required to demonstrate why the district court must go outside the administrative record); *Bark v. Northrop*, 2 F. Supp. 3d 1147, 1153 (D. Or. 2014) (denying discovery outside the administrative record where "plaintiffs [did] not demonstrate how the 30,000-page record and 1,500-page supplementary record are so insufficient as to frustrate effective judicial review of plaintiffs' claims"); *Audubon Soc'y of Portland, Or. v. Zinke,* No. 1:17-cv-00069, 2017 WL 6376464, at \*7 (D. Or. Dec. 12, 2017) (consideration of extra-record evidence "requires clear evidence demonstrating that the existing administrative record is inadequate and will frustrate judicial review"); *In re Delta Smelt Consol. Cases*, No. 1:09-cv-1053 OWW DLB, 2010 WL 2520946, at \*5 (E.D. Cal. June 21, 2010) (noting extra-record material may not be admitted under any of the exceptions to the record review rule unless the plaintiff first demonstrates the record is inadequate); *Ctr. for Biological Diversity v. Jewell*, No. 12-cv-02296, 2014 WL 116408, at \*2 (D. Ariz. Jan. 13, 2014) (declining to consider extra-record evidence where plaintiffs simply "seem[ed] dissatisfied with the conclusions reached by Defendants" and sought to include "a report that could be favorable to their position[,]" rather than demonstrating that failure to include the proffered evidence would "effectively frustrate[ ] judicial review" (citation omitted)).

9

inadequate. Mot. at 20-29 (not arguing that NMFS's Administrative Record is inadequate for review).

Second, even if Plaintiff had made such a showing, it failed to articulate discernable reasons for why any of the extra-record documents identify an "entirely new" subject matter that NMFS supposedly overlooked. *NWEA v. FWS*, 2019 WL 6977406, at *7 (citing *In re Delta Smelt Consol. Cases*, 2010 WL 2520946, at *5; *Alegre v. United States*, No. 16-cv-2442, 2021 WL 4934982, at *6 (S.D. Cal. July 29, 2021) ("Where '[t]he record contains sufficient information to explain how the [agency used the information before it] and why it reached its decision,' the [relevant factors] exception does not apply.") (citing *Cook Inletkeeper v. U.S. EPA*, 400 Fed. App'x 239, 240-41 (9th Cir. 2010). Instead, Plaintiff offers conclusory statements that the 27 documents are allegedly "relevant" to whether the BiOp was arbitrary and capricious. Mot. at 20-29 (Plaintiff, offering one to two sentences about the purported relevance as to Exhs. A-AA).

Exhibit A is emblematic of Plaintiff's conundrum. Exhibit A is an Oregon Department of Environmental Quality ("DEQ") document predating the BiOp by 20 years. Mot. at 20. Plaintiff merely says that it shows that DEQ had a record of not "protect[ing] and restor[ing] refugia," and therefore "is *relevant* to the likely efficacy of" the BiOp. *Id.* (emphasis added). But relevancy of a document to the agency's decision is not the appropriate inquiry. Instead, Plaintiff must show that each document it wishes to have added sets forth an "entirely new" subject matter that NMFS allegedly overlooked. *NWEA v. FWS*, 2019 WL 6977406, at *7. As this Court has said,

10

"[r]equiring record evidence to be more than merely relevant to the topic at hand, . . . is in keeping with the plain language of the [relevant factors] exception and with the Ninth Circuit's instruction that the *Lands Council* exceptions are to be narrowly construed and applied, lest they swallow the rule." *Id.* It is not enough that this document bolsters Plaintiff's theory of the case; it must meet all parameters of the supplementation inquiry.

Plaintiff commits the same error over and over with respect to the balance of the documents it would like added, "provid[ing] only a one[or two]-sentence blurb explaining each document's general relevance, and [at most] a brief description of the general subject matter referenced in" the BiOp. Mot. at 10. Several examples suffice. Plaintiff claims Exhibit B, a 2004 report on Oregon's temperature standards, "is relevant to" the importance of such standards. *Id.* at 21. It only argues in passing that the TMDL-related Exhibits H through K, are "relevant to the analysis of the Biological Opinion and the likely efficacy of the RPA." *Id.* at 24. Continuing with the theme, Plaintiff asserts that Exhibit L "is relevant to NMFS's analysis of the likelihood the RPAs based on the [CWA] would successfully protect salmon including through refugia." *Id.* at 24. And it contends that Exhibit N, another TMDL-related document, "is relevant to NMFS's reliance in the RPA on DEQ's developing TMDLs to protect and restore refugia." *Id.* at 24-25. And so on. *See id.* at 26 (arguing Exhibit R, a NOAA preliminary decision concerning Oregon's coastal non-point source pollution program, is "relevant to NMFS's analysis in the [BiOp] and RPA, which rely on Oregon DEQ's use of its Clean Water Act authorities"); *id.* at 27-30

11

(claiming Exhs. T-AA, U and W are "relevant" to BiOp's analysis).[5] These cursory arguments are inadequate on their face to demonstrate why the narrow "relevant factor" exception is met here. Furthermore, they also fail for the reasons set forth below.

Instead of pointing out an "entirely new factor" that NMFS allegedly ignored, Plaintiff impermissibly seeks to "use extra-record evidence to judge the wisdom of agency action." *NWEA v. FWS,* 2019 WL 6977406, at *7 (citing *San Luis & Delta-Mendota Water Auth. V. Locke*, 776 F.3d 971, 993 (9th Cir. 2014)). Plaintiff argues that it may add documents so it can argue that NMFS did not "consider[ ] all evidence that may be brought to bear on a specific relevant factor considered by the agency." *Id.* at *9. "[C]onsideration of extra-record evidence requires clear evidence that the existing record is inadequate to effectively review the claims at bar, and [NWEA] simply states, in conclusory fashion, that the evidence it offers is necessary to determine whether FWS considered all relevant factors in producing the . . . BiOp." *Id.* at *7-*8. Plaintiff "neglects to identify any area of general subject matter that was not addressed in the . . . BiOp" and does not "discuss the substance of the . . . BiOp at all." *Id.* at *10. The Court should decline to embrace Plaintiff's expansive–and unsupported–view of the relevant factors exception, lest Plaintiff be permitted to "drive a truck through what is supposed to be a narrow

---

[5] Plaintiff alleges that this category of documents somehow bears on Oregon's ability to successfully implement the narrative criterion because it demonstrates "important context for the longtime failures of Oregon's nonpoint program." Motion at 8. As described below, NMFS's Administrative Record already demonstrates that NMFS considered Oregon's implementation of the CWA when evaluating the effects of EPA's approval of the temperature standard. As with the other categories of documents, supplementation would serve no role.

exception to the record review rule." *Id.* *9 (citing *In re Delta Smelt Consol. Cases*, 2010 WL 2520946, at *5); *see also Audubon Soc'y*, 2017 WL 6376464, at *6 (declining to consider extra-record evidence when the plaintiff proffered documents that did "not opine on an entirely new general subject matter previously unconsidered by decision-makers").

Moreover, Plaintiff does not allege that documents in NMFS's Administrative Record are devoid of considerations of Oregon's implementation of the CWA or protection of refugia. Courts have been clear that a plaintiff cannot demand record supplementation simply "when specific hypotheses and/or conclusions are omitted from consideration." *Ctr. for Biological Diversity v. Skalski*, 61 F. Supp. 3d 945, 951-522 (E.D. Cal. 2014) (citation omitted), *aff'd*, 613 F. App'x 579 (9th Cir. 2015); *see also Sequoia Forest Keeper v. La Price*, 270 F. Supp. 3d 1182, 1229 (E.D. Cal. 2017) ("Supplementation is inappropriate if offered to suggest that [the federal agency] did not give [some information] sufficient weight.") (cleaned up), *aff'd*, 723 F. App'x 481 (9th Cir. 2018); *Seattle Audubon Soc'y v. Lyons*, 871 F. Supp. 1291, 1308-09 (W.D. Wash. 1994) ("That additional documents might provide a fuller record makes no difference if the record as it exists is adequate. . . the absence of some documents that could have been included does not justify invalidating the agency action or changing the standard of review." (citation omitted)), *aff'd*, 80 F.3d 1401 (9th Cir. 1996).

Indeed, far from frustrating effective review, here NMFS's 57,000-plus-page Administrative Record repeatedly addresses the issue of Oregon DEQ's implementation of the temperature-based water quality standards. For example, NMFS noted in the BiOp that EPA

13

had suggested in its 2013 biological evaluation that it expected the prior narrative criteria cold water refuge ["CWR"] provision "to be primarily considered in NPDES permits and TMDLs." NMFS AR 176. NMFS wrote EPA in November 2013, asking if EPA was "aware of CWR being incorporated into any existing NPDES permits." *Id.* EPA's response led NMFS to conclude that "DEQ ha[d] not implemented the narrative criterion for NPDES permits [concerning CWR] consistently, if at all." *Id.*

NMFS also observed that it had only previously found DEQ's narrative criterion acceptable because that criterion had included a requirement that the relevant water bodies must have sufficiently distributed CWR so that salmon and steelhead can migrate without experiencing water temperature-related adverse effects. *Id.* at 275. NMFS had subsequently found that Oregon had not "effectively used the narrative criterion pertaining to CWR to reduce the adverse effects . . . ." *Id.* Nor had Oregon "provided any analyses of or determinations as to the part of the narrative criterion that requires that CWR 'are sufficiently distributed so as to allow salmon and steelhead migration without significant adverse effects from higher water temperatures elsewhere in the water body.'" *Id.* at 179; *see id.* (NMFS, noting that the previous narrative criterion pertaining to CWR had not functioned as "an effective means for minimizing the adverse effects likely to be experienced by migrating salmon and steelhead under the 20°C

14

migration corridor criterion."). Thus, NMFS's Administrative Record *addresses* each issue that Plaintiff raises.[6]

For these reasons, the Court should deny Plaintiff's request to supplement NMFS's Administrative Record.

### III.    PLAINTIFF'S ALTERNATIVE REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED.

Plaintiff asks the Court to, in the alternative, take judicial notice of any document the Court rules should not be added to the record via supplementation. Motion at 29-30. Plaintiff cites nothing in support of this conclusory argument, which is contrary to the rule that it "cannot circumvent the rules governing administrative record supplementation by asking for judicial notice." *Delgadillo*, 2022 WL 301548, at *1 (collecting cases); *see also All. for the Wild Rockies*, 412 F. Supp. 3d at 1198. Indeed, one court recently rejected a similar request on these grounds. *See Bartell Ranch, LLC v. McCullough*, No. 3:21-cv-00080, 2021 WL 6118738, at *2 (D. Nev. Dec. 27, 2021) (declining to take judicial notice of documents parties sought to have "added to the record" through completion or supplementation). The salient point is not

---

[6] Additionally, the particular documents that Plaintiff seeks to add are redundant and extraneous because the parties do not contest that CWR are important, tributaries can function as CWR, or NMFS's Administrative Record amply covers those issues. Mot. at 22, 27 (regarding Exhibits C, H-L, M, and T); *see also* Motion at 27 (admitting that BiOp "specifically cites and discusses the Umpqua Basin TMDL."). And Plaintiff's argument concerning the number of fish that died in 2015 during a bout of high summer temperatures misses the mark. As Plaintiff concedes, NMFS *addressed* high summer 2015 temperatures in the BiOp, Motion at 21. Thus, the Court already has all of the information that it needs to review that issue. *Id.* And in any event, NMFS admitted that same issue in its Answer. Dkt. 47 ¶ 54.

whether a document meets the standards for judicial notice in the abstract, but rather, whether

Plaintiffs have demonstrated that one of the four narrow exceptions to the record review rule

have been met. As discussed above, they have not. Thus, Plaintiff's request for judicial notice

should be denied as improper.

## IV.    THE COURT SHOULD DECLINE TO ALLOW DISCOVERY.

Controlling Ninth Circuit precedent requires this Court to review Plaintiff's ESA claim

against EPA in accordance with APA record review principles. *Karuk Tribe of Cal. v. U.S.

Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (*en banc*) ("An agency's compliance with the

ESA is reviewed under the [APA]." (citation omitted)) ("*Karuk Tribe*"); *see also* Fed. R. Civ. P.

26(a)(B)(i) (exempting "an action for review on an administrative record"). Record review

principles require the Court to limit its review to the administrative record filed by the

Defendants except under very narrow circumstances. Plaintiff has not argued that any of the four

exceptions to record review applies to the claim against EPA. Accordingly, the Court should not

examine extra-record, factual evidence. *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir.

1985). Because the claims for relief in this case are reviewed based on the administrative record,

the discovery sought by the Plaintiff is not reasonably calculated to lead to the discovery of

admissible evidence and would impermissibly introduce extra-record factual evidence in a record

review case.  Fed. R. Civ. P. 26(b). Thus, discovery is not warranted, and the Court should grant

Defendants' request for an order clarifying that this is a record review case and discovery is not

permissible.

### A.    Claims Brought Under the ESA are Reviewed Under APA Record of Review Principles.

The Court should reject Plaintiff's argument that their claims against EPA are not bound by the scope  EPA's Administrative Record.[7] Forty years ago, the Supreme Court held that a court's review of a Federal agency's administrative actions is limited to the "arbitrary and capricious" standard of review provided by the APA and based on the administrative record, unless otherwise specified by statute. In that decision, *United States v. Carlo Bianchi & Co.,* the Supreme Court stated, "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held."  373 U.S. 709, 714-15 (1963) (citation omitted).

In *Ninilchik Traditional Council v. United States*, 227 F.3d 1186 (9th Cir. 2000), the Ninth Circuit examined "the correct standard of review" governing claims arising under Section 3117 of the Alaska National Interest Lands Conservation Act ("ANILCA"). *Id.* at 1193. Similar to the ESA's citizen-suit provision, Section 3117 of ANILCA provides that persons or organizations aggrieved may "file a civil action in the United States District Court for the District of Alaska . . . ."  16 U.S.C. § 3117(a). In *Ninilchik*, the plaintiffs argued that *de novo*

---

[7] As an initial matter, by declining to timely make any initial disclosures, Plaintiff has waived any argument that its claims against EPA are anything other than "an action for review on an administrative record." Fed. R. Civ. P. 26(1)(B); *see also id.* (1)(A) ("Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide [initial disclosures] to the other parties").

review was required because ANILCA "is silent with respect to whether the judicial review standard of the [APA] should apply." 227 F.3d at 1193. The Ninth Circuit soundly rejected this argument: "To the contrary, we hold that a reviewing court must apply the deferential APA standard in the absence of a stated exception when reviewing federal agency decisions." *Id.* at 1193.

The Ninth Circuit explained that the APA review provisions apply unless the statute "expressly" indicates a contrary intent. *Id.* The Ninth Circuit found that this result is compelled by Supreme Court precedent in *Dickinson v. Zurko*, 527 U.S. 150 (1999).[8] And the Ninth Circuit explained that its holding–that the APA must apply where a statute does not prescribe standards governing review–is supported by the Supreme Court's decision in *Chandler v. Roudebush*, 425 U.S. 840 (1976). *Id.* at 1194.

In *Chandler*, the Supreme Court confirmed that "*de novo* review is generally not to be presumed.'" *Id.* at 861 (citation omitted). The Supreme Court explained that this presumption does not apply where, as in that case, "there is a 'specific statutory authorization' of a district court 'civil action,' which both the plain language of the statute and the legislative history reveal to be a trial *de novo*." *Id.* at 862 (footnote omitted). That is, the Supreme Court's finding that *de*

---

[8] *See Ninilchik*,  227 F.3d at 1193-94 (explaining that the "majority opinion in *Dickinson* [means] that [5 U.S.C.] § 706 . . . functions as a default judicial review standard."); *id.* (citing *Webster v. Doe*, 486 U.S. 592, 607 (1988) (Scalia, J., dissenting) ("While a right to judicial review of agency action may be created by a separate statutory or constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless *specifically* excluded, see 5 U.S.C. § 559.")).

18

*novo* review procedures were appropriate, depended upon Congress "affirmatively [choosing] to grant federal employees the right to maintain a trial *de novo*." *Id.* at 8 n.37.

Here, the ESA judicial review provision, 16 U.S.C. § 1540(g)(1)(A), contains no internal scope or standard for review and, therefore, following the Supreme Court's instruction, the Ninth Circuit applies the APA standard and scope of review to evaluate ESA citizen-suit claims. *See* 5 U.S.C. § 706 ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party."). The Ninth Circuit has followed the Supreme Court's instructions for the last 30 years and continues to do so today.[9]

This result is confirmed by the ESA's legislative history. Congress clearly knows how to provide for *de novo* review and did so in the 1969 Endangered Species and Conservation Act–the

---

[9] *Karuk Tribe,* 681 F.3d 1006, 1017 (9th Cir. 2012); *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011) ("Our review of an agency's compliance with the ESA is governed by the [APA]."); *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 383 F.3d 1082, 1086 (9th Cir. 2004); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004); *Vill. of False Pass v. Clark*, 733 F.2d 605, 609 (9th Cir. 1984) ("Because [the] ESA contains no internal standard of review, [the APA], 5 U.S.C. § 706, governs review of the Secretary's actions."). Other Circuits are in accord. *Rio Grande Silvery Minnow v. U.S. Bureau of Reclamation*, 601 F.3d 1096, 1106, n.3 (10th Cir. 2010) (citing 5 U.S.C. § 706); *Newton Cnty. Wildlife Ass'n v. Rogers*, 141 F.3d 803, 808 (8th Cir. 1998); *Sierra Club v. Glickman*, 67 F.3d 90, 95-96 (5th Cir. 1995) (concluding that "the appropriate standard of review of agency action under the ESA, . . . is whether the action was arbitrary and capricious" and that "*de novo review is inapplicable to the facts of this case*.") (emphasis added); *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 685, (D.C. Cir. 1982) (citations omitted) (reviewing ESA claims based on the APA's standard and a record).

19

precursor to the 1973 Endangered Species Act.[10]  However, the legislative history leading to the enactment of the ESA, which included the citizen-suit provision, demonstrates that Congress equated silence on the applicable judicial standard and scope of review as incorporating the APA's standards. *See* Pub. L. No. 93-205, § 11, 87 Stat. 884 (1973). In discussing certain judicial review provisions, the House Conference Report discussed conflicting provisions and explained: "The Senate bill followed in part and differed in part from the otherwise controlling [APA]; *the House bill did not discuss the issue and thereby adopted the APA*." H. Conf. Rep. 93-740, at 25, *reprinted in* 1973 U.S.C.C.A.N. 3001, 3003 (Dec. 19, 1973) (emphasis added).  Like the Supreme Court in *Carlo Bianchi* and *Dickerson*, and like the Ninth Circuit in *Ninilchik*, Congress viewed a grant of jurisdiction that does not speak to the applicable standards or scope of review as incorporating the APA standard and scope of review.

In short, Supreme Court and Ninth Circuit precedent hold that *de novo* "review is appropriate only where Congress has made a clear expression in its favor." *Ninilchik*, 227 F.3d at 1194. The ESA's citizen-suit provision plainly does not contain a clear expression that plenary *de novo* review procedures govern judicial review; thus, as provided by Supreme Court and Ninth Circuit precedent, the APA's judicial review provisions govern.

//

---

[10] *See* Pub. L. No. 91-135, § 4(a)(1), 83 Stat. 275 (1969) (providing for judicial review of civil penalties and prescribing that "the court shall have authority to review the violation and the assessment of the civil penalty *de novo*.").

20

**B.** *Kraayenbrink* **and** *Washington Toxics* **Do Not Overrule Controlling Precedent.**

The Court should decline Plaintiffs' invitation to rely on the panel opinions in *Washington Toxics Coalition* and *Kraayenbrink*, for the proposition that discovery is appropriate in this case. Motion at 30-35. Such reliance would be misplaced for a number of reasons.

First, an *en banc* Ninth Circuit subsequently re-affirmed that suits brought under the ESA's citizen-suit provision are reviewed in accordance with APA record review principles. *Karuk Tribe,* 681 F.3d at 1017. In that case, the Karuk Tribe brought suit against the Forest Service alleging violations of the ESA for failing to consult on mining authorizations. *Id.* at 1016. The *en banc* court very clearly stated that review of an ESA claim is based on the administrative record in accordance with APA record review principles. *See id.* at 1017 ("*Because this is a record review case*, we may direct that summary judgment be granted to either party *based upon our review of the administrative record*.") (emphasis added). To the extent *Kraayenbrink* and *Washington Toxics* can be interpreted differently from this precedent, the *en banc* opinion in *Karuk Tribe* controls. *United States v. Parker*, 651 F.3d 1180, 1184 (9th Cir. 2011) ("Only the *en banc* court can overturn a prior panel precedent.").

Second, the *Washington Toxics* panel did not hold that 5 U.S.C. § 706 is inapplicable in an ESA citizen-suit claim, nor did it overrule decades of Ninth Circuit precedent that 5 U.S.C. § 706 *is* applicable to ESA citizen suit claims. That panel held only that it was not necessary to challenge "final" agency action in accordance with 5 U.S.C. § 704 in order to plead an ESA

21

citizen-suit claim. 413 F.3d at 1034. Furthermore, even the finality aspect of the *Washington Toxics* holding is at odds with a subsequent Supreme Court decision. *See Nat'l Ass'n of Home Builders v. Def. of Wildlife,* 551 U.S. 644 (2007). In *Home Builders,* the Supreme Court evaluated whether EPA had complied with ESA § 7(a)(2). In doing so, the Court unambiguously imported the APA, including the finality requirement, 5 U.S.C. § 704, into its ESA evaluation.[11] This instruction from the Supreme Court leaves no doubt that claims challenging an action agency's compliance with the ESA must comply with the APA's standard and scope of review.

Third, *Kraayenbrink* did not overrule prior precedent, and the opinion inconsistently applies the APA. *Compare Kraayenbrink,* 632 F.3d at 496 (noting that 5 U.S.C. § 706 governs review of the ESA claim) *with id.* at 497 (declining to apply the APA).[12] Importantly, in *Kraayenbrink,* the Ninth Circuit reviewed an administrative record, which it then appeared to supplement with extra-record material. *Id.* This is confirmed by the district court proceedings, where this issue arose only after the administrative record had been filed, the parties proceeded to summary judgment briefing, and then BLM filed a motion to strike extra-record evidence that

---

[11] *National Ass'n of Home Builders*, 551 U.S. at 659 ("The federal courts ordinarily are empowered to review only an agency's *final* action, see 5 U.S.C. § 704"); *see also id.* at 657 (applying the APA's "arbitrary and capricious" standard of review to EPA permitting decision); *id.* at 658 (suggesting the appropriate APA remedy would have been to remand to the agency); *id.* at 660 (recognizing the APA's harmless error rule under 5 U.S.C. § 706).

[12] Notably, the Federal Government dismissed its appeal in *Kraayenbrink* and did not challenge the District Court judgment on appeal. 632 F.3d at 477. Accordingly, the Federal Government did not present briefing on the scope of review to the Ninth Circuit.

was offered at summary judgment.[13] There was never any discovery in that case, nor was there any holding from the court that discovery was appropriate, and the Ninth Circuit clearly did not review the claims at issue *de novo*. Instead, it based its review on an administrative record supplemented with permissible extra-record evidence. *Id.* at 496. In light of the precedent discussed above, *Kraayenbrink* must be read to simply allow supplementation under recognized exceptions, not wholesale (and silent) abandonment of administrative review principles for ESA citizen-suit claims.

As the District of Arizona accurately noted in an ESA Section 7 case, *Kraayenbrink* contains "limited analysis" regarding the record issue in "a single paragraph" that would be "a sharp departure from the traditional rule of limiting the scope of review of agency action to the agency record." *WildEarth Guardians v. U.S. Forest Service*, No. 10-cv-385 (D. Ariz. April 26, 2011) (Dkt. 61 at 2). In 2020, the District of Arizona reaffirmed these principles, based on an exhaustive survey of the inconsistent application of *Kraayenbrink* by district courts, holding that the APA record-review rule, and its narrow exceptions, governs judicial review of ESA citizen-suit claims. *Ctr. for Biological Diversity v. Wolf,* 447 F. Supp. 3d 965, 970-972 (D. Ariz. 2020).[14]

---

[13] *W. Watersheds Project v. Kraayenbrink*, 538 F. Supp. 2d 1302, 1322 -1323 (D. Id. 2008) (noting that plaintiff had cited extra-record material, but the material cited by the court was all within the administrative record and before agency when it made its decision; upon examination of only this record material, the court found agency's failure to consult was arbitrary and capricious), *affirmed in part, vacated in part, and remanded by* 620 F.3d 1187.

[14] *See also Alliance for the Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1177 (D. Mont. 2013) (concluding after reviewing caselaw on *Kraayenbrink* that "the traditional four exceptions still

---

23

The District of Oregon also re-affirmed that, in ESA citizen-suit cases, judicial review in such

cases proceeds according to APA record review principles.[15] Several other District of Oregon

decisions have recognized the same principles.[16]

---

apply to plaintiffs' requests for supplementation of the administrative record for ESA claims, but [at most] the narrowness of the construction and application of these exceptions . . . should be relaxed for such claims."); *Ecol. Rights Found'n v. Fed. Em. Mgmt Agency*, 384 F. Supp. 3d 111, 1119 (N.D. Cal. 2019) (noting "[a] few courts appear on occasion to have afforded a broader consideration of extra-record materials in ESA disputes," but finding "the material in the administrative record is sufficient to resolve the cross-motions without resort to external materials").

[15] *Pac. Rivers Council v. Shepard*, 2012 WL 950032 at *3 (D. Or. Mar. 20, 2012) ("Under APA's scope-of-review provision in [5 U.S.C.] § 706, a court may 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, or an abuse of discretion' or that is 'otherwise not in accordance with law' based on its 'review [of] the whole record or those parts of it cited by a party.' 5 U.S.C. § 706.  The ESA citizen-suit provision does not provide otherwise. 16 U.S.C. § 1540(g).") While it is true that Magistrate Judge Acosta took the contrary position as to how to interpret *Kraayenbrink* in *NWEA v. FWS*, 2019 WL 6977406 at *14, that decision is inapposite. *NWEA v. FWS* (and, by extension, *Willamette Riverkeeper v. NMFS*, No. 6:21-cv-34, 2023 WL 4173893, *2-*3 (D. Or. June 26, 2023), which relied on *NWEA v. FWS*), leaned heavily on *Oregon Natural Desert Association v. Kimbell*, 593 F. Supp. 2d 1217 (D. Or. 2009) ("*ONRC*"). But unlike here, the *ONRC* court considered a challenge to an order permitting the plaintiff to introduce extra-record evidence under Section 9 of the ESA. Thus, *ONRC* based its decision on the fact that plaintiff alleged the take of listed species under ESA Section 9, and thus did not challenge any "specific administrative decision[ ]," and "advanced an enforcement action . . . requir[ing] proof of harm and causation." *Kimbell*, 593 F. Supp. 2d at 1220. That is not the situation here. Plaintiff has not alleged EPA violated ESA Section 9 claim. Dkt. 1. Rather, Plaintiff alleges that EPA unreasonably relied on NMFS's BiOp to comply with ESA Section 7, and conducted itself in accordance with that BiOp, which is a "specific administrative decision." *Id.* at 1220. Plaintiff's claim against EPA rises or falls based on the validity of the BiOp. There is no need for Plaintiff to demonstrate "harm and causation," and no basis for discovery. *Id.*

[16] *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp. 2d 1290, 1301 (D. Or. 2011) (granting motion to strike in an ESA case because: "The Declaration is plainly extra-record scientific opinion and argument submitted to undermine [the agency's] analyses and conclusions."); *Olenec v. Nat'l Marine Fisheries Serv.*, 765 F. Supp. 2d 1277, 1284 (D. Or.

The Western District of Washington also rejected the plaintiff's arguments that the scope of review in a CWA citizen-suit case was not limited by the administrative record. *Sierra Club v. McLerran*, No. 11-cv-1759, 2012 WL 5449681, at *1 (W.D. Wash. Nov. 6, 2012) ("*Sierra Club*"). In *Sierra Club,* the plaintiff explicitly analogized the CWA and ESA citizen-suit provisions and argued that *Kraayenbrink* and *Washington Toxics* – both ESA cases – required the Court to engage in *de novo* review and allow discovery to proceed against the EPA. *Sierra Club*, Dkt. No. 41 at 4-6. As the plaintiff noted, the ESA and CWA citizen-suit provisions contain nearly identical language. *Id.* at 5 (comparing ESA § 11(g)(1)(C) with CWA § 505(a)(2)). The plaintiff went on to claim that, as a result, the APA's scope of review provision did not apply. *Id.* at 4-6.However, the court squarely rejected this argument. *Id.* *1. The court declined to adopt the plaintiff's interpretation of *Kraayenbrink* and *Washington Toxics*, as well a case cited by Plaintiff–*Oregon Natural Desert Association v. Kimbell*, 593 F. Supp. 2d 1217, 1220 (D. Or. 2009).[17] Dkt. 65 at 34. The Court found that *none* of these four cases mean that courts should engage in *de novo* review. The court instead adopted the Federal Government's position that the issue in *Kraayenbrink* was whether the district court had properly allowed the parties to supplement the record pursuant to one of the four well-recognized record review

---

2011) (the APA "governs judicial review of agency actions under the ESA, CWA and NEPA. 5 U.S.C. § 706.").

[17] *Compare* Case No. 11-cv-01759-RSL, Dkt. No. 41 at 5-6 (plaintiff, citing *Kraayenbrink*, *Washington Toxics*, *Kimbell*, and *Martin*), *with* 2012 WL 5449681 at *2 (rejecting plaintiff's argument). Further, *Kimbell* also pre-dates *Karuk Tribe,* further reducing its relevance here.

exceptions. 2012 WL 54496681, at *2. The court concluded that "[w]hile the Ninth Circuit

ratified the district courts' use of discretion in those cases to supplement the record, [they did

not] require a district court to engage in *de novo* review of the record, or that the APA's

standards are inapt guidelines." *Id.* The court observed:

> Indeed, the Ninth Circuit has recognized that district courts wield great discretion
> in setting the scope of administrative review in citizen suit cases, . . .  This Court
> has employed the APA evidentiary guidelines as a valid exercise of its discretion
> in analyzing the scope of review in citizen suits. *See Seattle Audubon Society v.
> Norton*, 2006 WL 1518895, at *2 (W.D. Wash., May 25, 2006) (citizen suit for
> agency's failure to act under [ESA]).  [*Washington Toxics*, *Kraayenbrink* and
> *Kimbell* notwithstanding,] this Court finds no reason to depart from the APA
> standards in the instant matter.

*Id.* This Court should espouse the well-crafted reasoning found in *Sierra Club* and apply

the APA scope of review here.

Finally, Plaintiff's contentions fail to recognize that there is no dichotomy between the

APA standard of review and scope of review. The plain language of the APA, 5 U.S.C. § 706,

confirms this: "[T]he reviewing court shall … hold unlawful and set aside agency action,

findings, and conclusions found to be arbitrary and capricious, an abuse of discretion, or

otherwise not in accordance with law. … *In making the foregoing determinations, the court shall

review the whole record or those parts of it cited by a party.*" *Id.* (emphasis added); *City of

Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004). Here, Plaintiff acknowledges that the

APA's *standard* of review applies here. Motion at 31. It argues, however, that the APA *scope* of

review does *not* apply. *Id.* Besides ignoring the plain language of 5 U.S.C. § 706, Plaintiff's

interpretation would ask the Court to determine whether the agency had considered all available information when ensuring compliance with the ESA, while simultaneously presenting new information to the Court that the agency has never reviewed–only to assert that the agency had failed to consider the newly presented information. Such a circular (and impossible) standard cannot be a reasonable interpretation.

For these reasons, the Court should clarify that discovery is not appropriate and the merits of Plaintiff's claims will be reviewed on the basis of the Administrative Record

**CONCLUSION**

For the foregoing reasons, the Court should: (a) decline to supplement NMFS's Administrative Record with any of the extra-record documents that Plaintiff would like to have added; (b) establish that review of this action is limited to NMFS's and EPA's respective Administrative Records, and (c) direct the Plaintiff to refrain from serving discovery or attaching any extra-record documents, apart from declarations going to standing, to its motion for

//

//

//

//

//

//

//

summary judgment.

 Dated: October 25, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

   /s/ J. Brett Grosko   
J. BRETT GROSKO
*Senior Trial Attorney* (Md. Bar)
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7369
Washington, DC 20044-7369
Ph: 202-305-0342/Fax: 202-305-0275
brett.grosko@usdoj.gov

*Of Counsel*

Ryan Couch
NOAA Office of General Counsel

Christopher Len
EPA Region 10, Office of the Regional Counsel

Eleanor Garretson
EPA Office of General Counsel