IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST ENVIRONMENTAL
ADVOCATES, a non-profit organization,

        Plaintiff,

    v.

UNITED STATES NATIONAL MARINE
FISHIERIES SERVICE, a United States
Government Agency; JENNIFER QUAN, in
her official capacity as NMFS Regional
Administrator for the West Coast Region;
THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, a United States
Government Agency; and MICHAEL REGAN,
in his official capacity as EPA Administrator,

        Defendants.

Case No. 3:21-cv-01591-AB

OPINION AND ORDER

Allison LaPlante
Attorney at Law
333 NE Russell St., #200
Portland, OR 97212

Lydia Dexter
Earthrise Law Center
Lewis & Clark Law School
10101 S Terwilliger Blvd.
Portland, OR 97219

Bryan Telegin
Telegin Law
175 Parfitt Ave., SW Suite N270
Bainbridge Island, WA 98110

      Attorneys for Plaintiff

Toddy Kim
J. Brett Grosko
Environment & Natural Resources Section
U.S. Department of Justice
P.O. Box. 7369
Washington, D.C. 20044

      Attorneys for Defendants

**BAGGIO, District Judge:**

Plaintiff Northwest Environmental Advocates ("NWEA") brings this case under the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the Endangered Species Act

("ESA"), 16 U.S.C. § 1536(a)(2), against Defendants United States National Marine Fisheries

Service ("NMFS"); Jennifer Quan, in her official capacity as the NMFS Regional administrator

for the West Coast Region; the United States Environmental Protection Agency ("EPA"); and

Michael Regan, in his official capacity as the EPA Administrator.[1] Plaintiff challenges

Defendant NMFS's November 2015 Biological Opinion ("BiOp") and Defendant EPA's reliance

on that BiOp to comply with the ESA in its approval of Oregon's water quality criteria for

temperature. Plaintiff now moves to supplement the administrative record and take discovery.

For the reasons that follow, the Court grants in part and denies in part Plaintiff's motion.

///

///

---

[1] The Court refers to Defendants NMFS and Jennifer Quan as "Defendant NMFS" and Defendants EPA and Michael Regan as "Defendant EPA."

**BACKGROUND**

This case is the fourth in a series of cases involving Oregon's rivers and the survival of its cold water fish. Many salmonid species in the Pacific Northwest are listed as threatened or endangered, in part because of human-caused river temperature increases. Second Am. Compl. ("SAC") ¶¶ 47–48, ECF No. 45. High temperatures can cause increased mortality among juvenile salmonids, increased susceptibility to diseases, and altered migration timing. SAC ¶ 50. In 2015, for example, excessively warm water in the Columbia and Snake Rivers killed 250,000 adult sockeye salmon when they were prevented from successfully migrating upstream. SAC ¶ 51.

I.     **Litigation History**

In the early 1990s, Oregon began developing new standards for river temperatures as part of its Clean Water Act Triennial Review, 33 U.S.C. § 1313(c)(1). SAC ¶ 52. The 1996 standards set a 20°C criterion for salmonid rearing and migration in the Lower Willamette River and a 17.8°C criterion for salmon rearing without any information as to where and when this lower criterion applied. SAC ¶¶ 52, 55. Three years later, NMFS completed a biological opinion that the 20°C standard was likely to adversely affect salmonids but would not jeopardize the species based on certain promises made by Oregon. SAC ¶ 53. Ultimately, the EPA did not approve the 20°C criterion but no further action was taken by Oregon or the EPA on this standard. SAC ¶ 53. While NMFS and the EPA expressed concerns about the lack of detail related to the 17.8°C criterion, the EPA ultimately approved this lower standard. SAC ¶ 55.

In 2011, NWEA sued the EPA for failing to act and promulgate replacement temperate criteria for salmonid rearing and migration in the Lower Willamette River after it did not approve the 20°C standard. *See Nw. Env't Advocs. v. U.S. Env't Prot. Agency* ("*NWEA I*"), No.

CV-01-510-HA (D. Or.). The district court concluded that the EPA was under a nondiscretionary duty to act and had failed to do so under the Clean Water Act. *NWEA I*, 268 F. Supp. 2d 1255, 1261 (D. Or. 2003). The court also concluded that the EPA's approval of the 17.8°C temperature criterion and the NMFS biological opinion were arbitrary and capricious in light of the lack of detail surrounding the application of this criterion. *Id.* at 1267–68, 1273. The EPA was ordered to rescind portions of its 1999 approval of Oregon's temperature standards and approve new Oregon standards by March 2, 2004. SAC ¶ 56.

While litigation was ongoing in *NWEA I*, the EPA promulgated regional temperature guidance that recommended both numeric temperature criteria and narrative provisions to protect salmonids. SAC ¶ 57. It recommended states include "a provision to protect and, where feasible, restore the natural thermal regime" and recognized that rivers with significant hydrologic alterations may lose significant temperature diversity such that "maximum temperatures occur for an extended period of time and there is little cold water refugia available for fish to escape maximum temperatures." SAC ¶ 57 (citing Regional Temperature Guidance at 25); *see also* SAC ¶ 58 ("Although some altered rivers . . . experience similar summer maximum temperatures today as they did historically, there is a big difference between the temperatures that fish experience today versus what they likely experienced historically" because of their "high degree of spatial and temporal temperature diversity . . . .").

After *NWEA I*, Oregon revised its water quality standards for temperature to include both numeric and narrative criteria. SAC ¶ 59. These standards, however, also included a "natural conditions criterion," allowing Oregon to change the numeric temperature criteria upwards without any federal agency review if it determined that water temperatures were "naturally" hotter. SAC ¶ 59. In 2003, Oregon submitted these standards to EPA for approval. SAC ¶ 59.

After NMFS found Oregon's revised water quality standards did not jeopardize the ESA-listed salmonid species, the EPA approved the 2003 standards. SAC ¶ 59.

NWEA challenged the EPA's approval of Oregon's 2003 temperature standards and the related biological opinions. *See Nw. Env't Advocs. v. U.S. Env't. Prot. Agency* ("*NWEA II*"), No. 3:05:cv-01876-AC (D. Or.). In 2013, the court held that the natural conditions criterion was unlawful. *NWEA II*, 855 F. Supp. 2d 1199, 1217 (D. Or. 2012). But the court upheld the EPA's approval of the 20°C numeric criterion while expressing some concerns "regarding the uncertainty inherent in the approval of the 20°C criterion and the attendant narrative provision calling for sufficient coldwater refugia . . . ." *Id.* at 1214. As to the relevant biological opinions, the court concluded NMFS's review was arbitrary and criticized NMFS for adopting the 20°C criterion as an improvement over current water temperatures rather than looking to the biological needs of existing salmonids. *Id.* at 1222–1231. The court ordered the EPA to disapprove the natural conditions criterion and for NMFS to reconsider its biological opinion. SAC ¶¶ 62, 64.

While *NWEA II* was still ongoing, NWEA challenged the EPA's approval of Oregon's 2004-2010 temperature Total Maximum Daily Load ("TMDL")[2] clean-up plans. *Nw. Env't Advocs. v. U.S. Env't Prot. Agency* ("*NWEA III*"), No. 3:12-cv-01751-HZ. Based on the then-applicable natural conditions criterion, NWEA alleged that Oregon was using TMDLs to supplant the biologically-based numeric criteria with superseding criteria as high as 32.5°C, a temperature that is lethal to salmon. Compl. ¶ 42, *NWEA III*, No. 3:12-cv-01751-HZ, ECF No. 1. In *NWEA III*, the court agreed with NWEA that approving TMDLs at such high temperatures was unlawful. No. 3:12-cv-01751-HZ, 2017 WL 1370713, at *10 (D. Or. Apr. 11, 2017). The

---

[2] "A TMDL is the total daily loading of pollutants for a particular waterbody or waterbody segment . . . ." SAC ¶ 26.

court ordered the EPA to replace the temperature TMDLs. *NWEA III*, 3:12-cv-01751-HZ, 2018 WL 6524161, at *7 (D. Or. Dec. 12, 2018). Implementation of this judgment is ongoing. Order, *NWEA III*, No. 3:12-cv-01751-HZ (D. Or. June 11, 2019), ECF Nos. 200, 224.

## II.     2015 Biological Opinion

The present case involves the BiOp issued by NMFS in 2015 after the Court's order in *NWEA II*. The BiOp concerned the narrative criteria associated with 20°C salmonid migration corridors, which required these water bodies to have (1) "coldwater refugia that are sufficiently distributed so as to allow salmon and steelhead migration without significant adverse effects from higher water temperatures elsewhere in the water body" and (2) a thermal pattern that reflects the natural seasonal thermal pattern. SAC ¶ 75. In the BiOp, NMFS determined that the 20°C criterion would result in jeopardy and that the narrative criteria related to cold water refugia had not been consistently or effectively implemented by Oregon. SAC ¶ 76.

Because of its finding, NMFS set out a reasonably prudent alternative ("RPA") pertaining to cold water refugia in the Columbia and Willamette Rivers. The RPA called for development of a Cold Water Refugia Plan to "adequately interpret the narrative criterion to allow for implementation of the criterion through [Oregon] DEQs Clean Water Act authorities." SAC ¶ 77. The RPA sets out two pages of detailed requirements for the Cold Water Refugia Plan. SAC ¶ 77. NMFS concluded that the proposed action as revised by the selected RPA was not likely to jeopardize the continued existence of the imperiled salmonids or destroy or adversely modify their critical habitat. SAC ¶ 78.

The BiOp also includes an incidental take statement for listed salmonids. SAC ¶ 80. Because the action areas were so large, NMFS used habitat measures for the extent of take instead of quantifying take as the number of fish. SAC ¶ 80. One measure NMFS used was the

length of time to complete the Cold Water Refugia Plan for the Willamette and Columbia Rivers, which was estimated to be completed by November 3, 2018. SAC ¶ 80. Defendant EPA missed this deadline, completing the Willamette Cold Water Refuge Study on March 18, 2020, and the Columbia Cold Water Refuge Plan on January 7, 2021. SAC ¶ 81.

## III.    Procedural History

Plaintiff filed this action on November 2, 2021. Compl., ECF No. 1. Plaintiff challenges Defendant's NMFS's BiOp as arbitrary and capricious under the APA because it: (1) reached its "no jeopardy" determination by relying on improper factors, such as "non-federal mitigation actions that are not reasonably certain to occur"; (2) failed to articulate a rational connection between its findings in the BiOp and its conclusion that approval of the temperature standard as modified by the RPA would not jeopardize the impacted salmonids; and (3) issued a flawed and invalid incidental take statement. SAC ¶¶ 83–87. Plaintiff also challenges Defendant EPA's failure to independently ensure no jeopardy or destruction or adverse modification to critical habitat by relying on an insufficient RPA in violation of Section 7 of the ESA. SAC ¶¶ 88–93. Finally, Plaintiff alleges that Defendant EPA exceeded its take in a manner not considered by the BiOp because it did not complete its Cold Water Refugia Plan by the deadline set in the BiOp. SAC ¶ 81.

In early 2022, the Parties requested a stay to explore resolution through a negotiated settlement. Joint Mot. Stay, ECF No. 11. The stay continued through August 2023, when the parties indicated that they were unable to settle their case. Joint Mot. Further Proc'gs, ECF No. 40; Mins. of Proc'gs, ECF No. 42. The Court then set a case schedule that included deadlines for a Second Amended Complaint and briefing on the scope of the relevant administrative records. Mins. of Proc'gs.

Defendants filed their respective Administrative Records on November 30, 2023. Defendant EPA A.R., ECF No. 48; Defendant NMFS A.R., ECF No. 49. While the parties were able to resolve some of their issues regarding the scope of Defendant NMFS's administrative record, Pl.'s Mot. Suppl. A.R. ("Pl.'s Mot.") 18, ECF No. 65, they presently dispute whether Plaintiff can further supplement the administrative record filed by Defendant NMFS and the proper scope of review of Plaintiff's ESA claim against Defendant EPA.

## STANDARDS

Under the APA, a court may set aside a decision of a federal administrative agency "if it is 'unsupported by substantial evidence' or 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Mackowiak v. Univ. Nuclear Sys., Inc.*, 735 F.2d 1159, 1162 (9th Cir. 1984) (citing 5 U.S.C. § 706(2)(A), (E)). "Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Judicial review of agency action under the APA must be based on the "whole record." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citing 5 U.S.C. § 706). The whole record consists of "everything that was before the agency pertaining to the merits of its decision." *Id.* (citation omitted). This includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes everything contrary to the agency's position." *Thompson*, 885 F.2d at 555.

An agency is entitled to the presumption that the submitted record is complete. *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). A party who moves to supplement or "complete" the record must "show that the additional materials sought are necessary to adequately review the [agency's] decision . . . ." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th

Cir. 2010). A party seeking to complete an administrative record bears the burden of overcoming the presumption of regularity by "clear evidence." *Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *4 (D. Or. Dec. 20, 2019).

## DISCUSSION

Plaintiff's motion has three parts. First, Plaintiff moves for an order compelling Defendant NMFS to supplement its administrative record. Pl.'s Mot. 18. Second, Plaintiff moves for an order from the Court declaring that its review of Plaintiff's claim against Defendant EPA is not confined to the administrative record filed by Defendant EPA in this case. *Id.* at 30. Third, Plaintiff seeks an order that it is entitled to discovery on its ESA claim. *Id.* at 33. The Court addresses each argument below.

## I.    Supplementation of Defendant NMFS's Administrative Record

Plaintiff makes three arguments in its motion to supplement Defendant NMFS's administrative record. First, Plaintiff asks the Court to defer deciding this issue until summary judgment motions are filed. Pl.'s Mot. 19. Second, and in the alternative, Plaintiff asks that the Court admit 27 documents to supplement the administrative record. *Id.* at 20. Finally, Plaintiff argues that the Court can take judicial notice of the proposed documents. *Id.* at 29. Defendants oppose each part of Plaintiff's motion, arguing that Plaintiff has waived its first argument to defer its supplementation request until summary judgment, that Plaintiff has not met its burden to show that the Court should supplement the administrative record, and that Plaintiff's request for judicial notice is inappropriate. Defs.' Resp. in Opp'n to Mot. Suppl. the A.R. ("Defs.' Resp.") 6, 8, 15, ECF No. 69.

The Court will defer its decision on whether to supplement Defendant NMFS's administrative record with Plaintiff's proposed documents.[3] At this juncture, "attempting to assess what extra-record materials may be necessary to adequately set out an argument on summary judgment would be highly speculative and result in a waste of judicial . . . resources . . . ." *Audubon Soc'y of Portland v. Zinke*, Case No. 1:17-cv-00069-CL (lead), 2017 WL 2172439, at *1–2 (D. Or. May 16, 2017) (holding "the parties are not foreclosed from seeking to supplement the record once summary judgment briefing begins"); *see also* Mins. of Proc'gs, *Xerces Soc'y for Invertebrate Consv. v. Shea*, No 3:22-cv-00790-HZ (D. Or. Dec. 8, 2022), ECF No. 27 (allowing requests to supplement the record as part of summary judgment briefing). Defendant NMFS's record is 57,000 pages long. The Court cannot determine whether Plaintiff's extra-record evidence is necessary to evaluate Defendant NMFS's decision without the full context of the parties' arguments on summary judgment. This practice is also consistent with this district's local rules, which provide procedures for handling evidentiary issues at summary judgment. *See* D. Or. R. 56-1(b) (instructing parties to file evidentiary objections at summary judgment in their response or reply memoranda).

However, to assist the parties at summary judgment, the Court will resolve their dispute as to the applicable standard for supplementation of the record. Plaintiff suggests that

_____

[3] The Court is not persuaded by Defendants' argument that Plaintiff has waived this request or that they will be prejudiced if the Court defers its decision. *See* Defs.' Resp. 6–8. The Court declines to infer waiver from Plaintiff's negotiation of a briefing schedule for its motion to complete or supplement the administrative record. And Defendants have not demonstrated any prejudice, only broadly claiming that they would be deprived of a "settled understanding of the Administrative Records' content." Defs.' Resp. 8. Defendants, however, will have an opportunity to address Plaintiff's evidence in their motions for summary judgment and in additional briefing on the scope of the record. And to the extent that there is any prejudice, it is outweighed by the benefit to the Court and the parties in addressing this issue at the same time as the merits of the case.

supplementation "is proper where the information contained in the proposed documents is

necessary to this Court's review of the agency's action and the information cannot be extracted

from the existing record." Pl.'s Reply in Supp. of Mot. to Suppl. A.R. ("Pl.'s Reply") 11, ECF

No. 70. Defendants, by contrast, argue that Plaintiff must show that the record is inadequate and

that the new evidence addresses an "entirely new" subject matter. Generally, Defendants' narrow

approach is more consistent with the law of this circuit.

    The Ninth Circuit in *Lands Council v. Powell* identified four narrow exceptions to the

general rule that courts are limited to the administrative record in reviewing an agency decision:

> In limited circumstances, district courts are permitted to admit extra-record
> evidence: (1) if admission is necessary to determine "whether the agency has
> considered all relevant factors and has explained its decision," (2) if "the agency
> has relied on documents not in the record," (3) "when supplementing the record is
> necessary to explain technical terms or complex subject matter," or (4) "when
> plaintiffs make a showing of agency bad faith."

395 F.3d 1019, 1030 (9th Cir. 2005) (internal citations omitted). "These limited exceptions

operate to identify and plug holes in the administrative record" and are "narrowly construed and

applied." *Id*.

    Here, Plaintiff seeks to admit evidence under the "relevant factors" exception. The

relevant factors exception "is the most difficult to apply . . . ." *San Luis & Delta-Mendota Water

Authority v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (citing *Asarco, Inc. v. U.S. Env't Prot.

Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980)). This exception "permits a district court to

consider extra-record evidence to develop a background against which it can evaluate the

integrity of the agency's analysis, [but] the exception does not permit district courts to use extra-

record evidence to judge the wisdom of the agency's action." *Id.* (citing *Asarco*, 616 F.2d at

1160). Thus, extra-record evidence admitted under the relevant factors exception may not be

considered "as a basis for questioning the agency's scientific analyses or conclusions." *Id.*

The parties already litigated this issue in another case between Plaintiff and Defendant NMFS. There, Judge Acosta rejected Plaintiff's argument that the court should take a broad approach to supplementation under the relevant factors exception. *See Nw. Env't Advocs*., 2019 WL 6977406, at *7–9. Judge Acosta found "ample authority, in the Ninth Circuit and in this district, demonstrating that a party seeking to invoke the *Lands Council* exceptions must first show the administrative record is inadequate to effectively review the challenged action." *Id.* at *8 (citing cases from the Ninth Circuit, District of Oregon, District of Arizona, and the Eastern District of California). He also reasoned that the "plain language of the relevant factors exception counsel[ed] against the inclusive application [the plaintiff] advance[d]" and concluded "[r]equiring record evidence to be more than merely relevant to the topic at hand . . . is in keeping with the plain language of the exception . . . ." *Id.* at *9.

The Court agrees with Judge Acosta. Defendants' narrower approach is more consistent with Ninth Circuit precedent, which suggests that a plaintiff must demonstrate that the administrative record is inadequate for the Court to consider extra-record evidence. The Ninth Circuit has cautioned that the *Lands Council* exceptions are to be "narrowly construed and applied" and operate to "identify and plug holes in the administrative record." 395 F.3d at 1030 ("The scope of these exceptions . . . is constrained, so that the exception does not undermine the general rule."). In *Fence Creek Cattle Co.*, for example, the Ninth Circuit found the district court did not abuse its discretion in denying the plaintiff's attempt to supplement the record. 602 F.3d at 1131. In its decision, the circuit court emphasized that the plaintiff had failed to show any gaps or holes in the administrative record and had not "met its heavy burden to show that the additional materials sought [were] necessary to adequately review the Forest Service's decision." *Id.* ("We think the voluminous record already before us is sufficient to conduct the necessary

review under the APA."). In other words, Plaintiff must show that the district court cannot adequately review the agency's decision on the administrative record alone for the Court to consider supplementing the record. "To hold otherwise would allow [the movant] to drive a truck through what is supposed to be a narrow exception to the record review rule." *In re Delta Smelt Consol. Cases*, No. 1:09-cv-1053 OWW DLB, 2010 WL 2520946, at *5 (E.D. Cal. June 21, 2010).

As to Defendants' argument that the extra-record evidence must present an "entirely new" subject matter that the agency did not consider, Defs.' Resp. 10–15, the Court declines to adopt such a strict rule. The Court recognizes that the movant is unlikely to succeed in their motion without demonstrating that the agency failed to consider a subject matter or issue in its entirety. *See Audubon Soc'y of Portland v. Zinke*, Case No. 1:17-cv-00069-CL (lead), 2017 WL 6376464, at *6 (D. Or. Dec. 12, 2017) (declining to consider extra-record evidence when the plaintiff proffered documents that did "not opine on an entirely new general subject matter previously unconsidered by decision-makers"). After all, the ultimate question under *Lands Council* is whether an agency considered all relevant factors, not whether it "considered those factors in a specific way or considered all evidence that may be brought to bear on a specific relevant factor considered by the agency." *See Nw. Env't Advocs.*, 2019 WL 6977406, at *9. So, while the Court declines to adopt the bright-line rule proposed by Defendant, Plaintiff should be careful in its analysis and ensure that any evidence that does not identify "entirely new" subject matter does not threaten to judge the wisdom of an agency's action. *See Locke*, 776 F.3d at 993 ("Although the relevant factors exception permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's

analysis, the exception does not permit district courts to use extra-record evidence to judge the wisdom of the agency's action.").

Finally, the Court declines to take judicial notice of Plaintiff's extra-record documents. Plaintiff has not adequately developed its argument as to why the Court can take judicial notice of each of the proposed documents. *See* Pl.'s Mot. 29–30; Pl.'s Reply 25–26. And the Court is concerned that such liberal use of judicial notice runs contrary to the Ninth Circuit's decision in *Lands Council*. The cases Plaintiff cites in support of its request provide no discussion as to the intersection between judicial notice and the Ninth Circuit's rules regarding supplementation of the record in an APA case. *See, e.g., Daniels Hall v. Nat'l Educ.* Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010); *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1112 n.14 (9th Cir. 2008); *Ctr for Env't L. & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1010–11 n.5 (9th Cir. 2011); *Safe Chemicals, Healthy Families v. U.S. Env't Prot. Agency*, 943 F.3d 397, 420 n.13 (9th Cir. 2019). Accordingly, the Court denies Plaintiff's request for judicial notice at this time. Plaintiff can renew its request at summary judgment.

## II.    Scope of the EPA's Administrative Record

Plaintiff argues that its claim against Defendant EPA is not limited to the administrative record because it was brought pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g). The Court agrees.

There is no dispute that "review of administrative decisions involving the ESA is guided by the arbitrary and capricious standard of review articulated by Section 706 of the APA." *Nw. Env't Adovcs.*, 2019 WL 6977406, at *12 (citing *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 934 n.4 (9th Cir. 2006)). Therefore, "[i]rrespective of whether an ESA claim is brought under the APA or the citizen-suit provision, the APA's 'arbitrary and

capricious' standard [of review] applies." *W. Watersheds Proj. v. Kraayenbrink*, 632 F.3d 472,

481 (9th Cir. 2011)

The parties, however, dispute the appropriate *scope* of review for Plaintiff's ESA claim.

Plaintiff argues that the Ninth Circuit settled this issue in *Western Watersheds Project v.

Kraayenbrink*, when it concluded that the APA does not dictate the scope of review in ESA

citizen-suit cases. Defendants disagree, arguing that *Kraayenbrink* is inconsistent with earlier

precedent and was overruled by the *en banc* decision in *Karuk Tribe of California v. U.S. Forest

Serv.*, 681 F.3d 1006 (9th Cir. 2012) (en banc). Both Plaintiff and Defendants cite many district

court decisions that support their respective arguments. Pl.'s Mot. 31; Defs.' Resp. 23.

While district courts in this circuit are split on this question, *see White v. U.S. Army

Corps of Eng'rs,* No. 3:22-CV-06143-JSC, 2024 WL 24322, at *3–5 (N.D. Cal. Jan. 2, 2024)

(citing cases), the Court is persuaded that under Ninth Circuit precedent Plaintiff's ESA claim is

not limited to the administrative record. In *Kraayenbrink*, the plaintiffs brought a claim under

Section 7 of the ESA alleging that the Bureau of Land Management erred in finding that their

regulatory amendments would have "no effect" on listed species or critical habitat. 632 F.3d at

496. Plaintiffs submitted extra-record material in support of this argument, which the intervenors

argued was not permissible under the ESA. *Id.* at 497. The Ninth Circuit disagreed, finding that

the scope of review was not limited to the administrative record because the ESA provided a

citizen suit remedy:

> As we explained in *Washington Toxics Coalition,* the APA applies only where
> there is no other adequate remedy in a court, and—because the ESA provides a
> citizen suit remedy—the APA does not apply in such actions. Therefore,
> under *Washington Toxics Coalition* we may consider evidence outside the
> administrative record for the limited purposes of reviewing Plaintiffs' ESA claim.

*Id.* (internal citations and quotations omitted); *see also Wash. Toxics. Coal. v. Envt'l Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("Because [the ESA] independently authorizes a private right of action, the APA does not govern the plaintiff's claims.") *abrogated on other grounds as recognized in Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1089 (9th Cir. 2015). The circuit court then considered multiple declarations from agency experts that the regulations at issue "may affect" listed species and, therefore, triggered the consultation requirement under the ESA. *Kraayenbrink*, 632 F.3d at 497–98. Citing *Washington Toxics* and *Kraayenbrink*, at least three other judges in this district have also concluded that the court's review in cases brought under the citizen suit provision of the ESA are not limited to the administrative record. *See Willamette Riverkeeper v. Nat'l Marine Fisheries Serv.*, No. 6:21-cv-00034-AA, 2023 WL 4173893, at *2–3 (D. Or. June 26, 2023); *Nw. Env't Advocs.*, 2019 WL 6977406, at *12–14; *Or. Nat'l Desert Ass'n v. Tidwell*, 716 F. Supp. 2d 982, 987–88 (D. Or. 2007).

Further, contrary to Defendants' argument, *Karuk Tribe* has not overruled *Kraayenbrink*. In *Karuk Tribe*, the plaintiff challenged the Forest Service's approval of four notices of intent to conduct mining activities, arguing that these actions "may affect" listed species and trigger consultation under the ESA. 681 F.3d at 1021, 1027. The sole discussion of the scope of review in *Karuk Tribe* was the circuit court's acknowledgement that it was a "record review case" and the court could grant summary judgment "to either party based upon [the court's] review of the administrative record." *Id.* at 1017. In other words, the scope of review was not at issue in *Karuk Tribe*, and the circuit court there did not discuss *Kraayenbrink*. *See Nw. Env't Advocs.*, 2019 WL 6977406, at *12–14 ("[T]he Ninth Circuit did not 'hold' that ESA citizen-suits must adhere to the scope of review set forth in the APA, and *Karuk Tribe* did not quietly overrule *Washington*

*Toxics* or *Kraayenbrink*."); *White*, 2024 WL 24322, at *3 (citing cases from the Northern District of California finding *Karuk Tribe* did not overrule *Kraayenbrink*). In recent years, the Ninth Circuit has also cited its holding in *Kraayenbrink* with approval, noting in *National Family Farm Coalition v. U.S. Environmental Protection Agency* that the court could consider materials outside the administrative record "for the limited purpose[] of reviewing [an] ESA claim." 966 F.3d 893, 926 n.11 (9th Cir. 2020). In light of the foregoing decisions, the Court concludes that it may consider evidence outside the administrative record for the limited purpose of reviewing Plaintiff's claim that Defendant EPA failed to fulfill its obligations under Section 7 of the ESA.

## III.    Discovery

In seeking discovery, Plaintiff argues it "does not intend to employ the full panoply of discovery tools provided by the Federal Rules of Civil Procedure," but "does . . . intend to rely on expert testimony . . . ." Pl.'s Mot. 34. Defendants do not specifically respond to Plaintiff's request for discovery except by arguing in a footnote that Plaintiff has forgone its chance at discovery by failing to make initial disclosures under Federal Rule of Civil Procedure 26. Defs.' Resp. 17 n.7.

Although the Court has concluded that the scope of review of Plaintiff's ESA claim is not limited to the administrative record, the parties have not adequately addressed whether and to what extent discovery is allowed in this case. The parties shall confer and address this issue in a joint filing no later than 30 days after the issuance of this Opinion & Order. The parties shall also provide the Court with a proposed case schedule that includes a joint discovery plan and a briefing schedule for dispositive motions.

///

///

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Supplement the Administrative Record [65]. The Court will consider Plaintiff's request to supplement Defendant NMFS's Administrative Record concurrently with the Parties' summary judgment motions. The Court finds that review of Plaintiff's claim against Defendant EPA arising under the ESA is not limited to the administrative record. Within 30 days of this Opinion & Order, the parties shall file a joint status report and proposed case schedule addressing Plaintiff's proposed discovery, dispositive motions, and Plaintiff's motion to supplement the administrative record.

IT IS SO ORDERED.

DATED this 11th day of February 2025

_____
AMY M. BAGGIO
United States District Judge