UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NORTHWEST ENVIRONMENTAL
ADVOCATES, a non-profit organization,          Case No. 3:21-cv-01591-AB

                         Plaintiff,

          v.                                   **JOINT STATUS REPORT**

UNITED STATES NATIONAL MARINE
FISHERIES SERVICE, a United States
Government Agency, JENNIFER QUAN, in
her official capacity as NMFS Regional
Administrator for the West Coast Region,
THE UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY, a United States Government
Agency, and LEE ZELDIN, in his official
capacity as EPA Administrator,

                         Defendants.

Plaintiff Northwest Environmental Advocates ("NWEA") and Defendants United States National Marine Fisheries Service ("NMFS"), Jennifer Quan, in her official capacity as NMFS Regional Administrator for the West Coast Region, United States Environmental Protection Agency ("EPA"), and Lee Zeldin,[1] in his official capacity as EPA Administrator (collectively, "Defendants," and together with NWEA, "the Parties"), respectfully submit the following Joint Status Report.

On February 11, 2025, this Court issued an Opinion and Order (ECF No. 71) granting in part and denying in part NWEA's Motion to Supplement the Administrative Record, Clarify the Scope of Review, and for Leave to Take Discovery (ECF No. 65). After ruling on the legal issues presented in NWEA's motion, the Court ordered as follows:

> Although the Court has concluded that the scope of review of Plaintiff's ESA claim is not limited to the administrative record, the parties have not adequately addressed whether and to what extent discovery is allowed in this case. The parties shall confer and address this issue in a joint filing no later than 30 days after the issuance of this Opinion & Order. The parties shall also provide the Court with a proposed case schedule that includes a joint discovery plan and a briefing schedule for dispositive motions.

ECF No. 71 at 17. The Court further ordered that "[w]ithin 30 days of this Opinion & Order, the parties shall file a joint status report and proposed case schedule addressing Plaintiff's proposed discovery, dispositive motions, and Plaintiff's motion to supplement the administrative record." *Id*. at 18.

Pursuant to the Court's directive, the Parties have conferred through counsel on the phone and in writing about those subject matters. The Parties have been able to agree on some, but not all issues pertaining to how this case should move forward.

---

[1] Lee Zeldin is substituted for his predecessor, Michal Regan, who was previously named.

1    JOINT STATUS REPORT

The Parties have agreed on the process for supplementation of NMFS's administrative record, and the basic framework for briefing summary judgment. The Parties jointly request that the Court adopt the following:

- By April 14, 2025, NMFS will file a corrected administrative record, adding the documents agreed upon through the Parties' conferral prior to NWEA's motion (ECF No. 65) and making other agreed-upon ministerial corrections.

- NWEA will file a renewed motion to supplement the NMFS administrative record concurrently with its summary judgment motion, addressing those documents discussed in NWEA's first motion (ECF No. 65); Defendants will file a response to that renewed motion to supplement concurrently with Defendants' cross-motion for summary judgment and response to NWEA's summary judgment motion; NWEA will file a reply on its renewed motion concurrently with NWEA's response/reply on summary judgment.

- After resolution of the issues pertaining to discovery on Claim Two, described below, the Parties will submit a further proposed schedule for this case. The Parties generally propose that for summary judgment briefing, NWEA will file its motion for summary judgment, followed by Defendants' combined cross-motion and response brief, followed by NWEA's combined response and reply, followed by Defendants' reply. Subject to specific calendaring conflicts for the Parties or counsel, the Parties anticipate that they will propose summary judgment briefing intervals of six weeks, six weeks, four weeks, four weeks.

The Parties have been unable to agree on how Claim Two should proceed. NWEA seeks to use limited discovery for its prosecution of Claim Two, and Defendants' views are outlined below. Because the Parties have been unable to reach agreement on these issues, we present our respective positions below.

2   JOINT STATUS REPORT

**NWEA's Position**

As NWEA argued in its motion (ECF No. 65 at 30–35), and as this Court agreed (ECF No. 71 at 14–17), judicial review of NWEA's Endangered Species Act ("ESA") citizen-suit claim is not limited to the "administrative record" that EPA filed in this case. Claim Two is not an Administrative Procedure Act ("APA") claim, and as such, the APA's "whole record" limitation is simply irrelevant. It follows from this conclusion that NWEA is entitled to use the tools of discovery—as APA administrative record review claims are an *exception* to the otherwise applicable discovery rules. *See, e.g.*, Fed. R. Civ. Pro. 26(a)(1)(B)(i) (setting forth proceedings that are "exempt" from Rule 26 requirements, including "an action for review on an administrative record"). Thus, where, as here, the claim is not "an action for review on an administrative record," the rules of discovery apply.

For this reason, courts have allowed discovery in citizen-suit claims against federal agencies, and they have allowed expert testimony, specifically. *See, e.g*, *Nw. Env't Advocs. v. U.S. Dep't of Com., et al.*, Order Regarding Scope of Review, Dkt. No. 58 at 2–3, Case No. C16-1866-JCC (W.D. Wash. Nov. 8, 2017) (holding that ESA citizen suit was not limited to the record); Dkt. No. 126, Case No. C16-1866-JCC (W.D. Wash. Sept. 26, 2018) (subsequent order in same ESA citizen-suit case setting discovery deadlines, including an expert disclosure deadline); *Nw. Env't Advocs. v. U.S. Env't Prot. Agency*, Case No. 3:21-CV-01136-HZ, 2022 WL 15331465, at *4 (D. Or. Oct. 24, 2022) (permitting written discovery in Clean Water Act citizen suit); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497–98 (9th Cir. 2011) (holding that "because the ESA provides a citizen suit remedy—the APA does not apply in such actions. . . [and the court] may consider evidence outside the administrative record," and relying on three expert declarations submitted by plaintiffs to conclude that the Bureau of Land Management violated the ESA); *Nat'l*

3   JOINT STATUS REPORT

*Wildlife Fed'n v. Fed. Emergency Mgmt. Agency*, No. C11-2044-RSM, 2014 WL 5449859, at *9 (W.D. Wash. Oct. 24, 2014) (citing *Kraayenbrink* and relying on two expert declarations submitted by plaintiffs); *Or. Nat. Desert Ass'n v. Tidwell*, 716 F.Supp.2d 982, 987 (D. Or. 2007) (relying on expert reports and rebuttals submitted in support of cross motions for summary judgment on the plaintiff's ESA citizen-suit claim); *Or. Nat. Desert Ass'n v. Kimbell*, 593 F.Supp.2d 1213, 1215 (D. Or. 2008) (granting plaintiff's motion to submit extra-record evidence, including expert reports, in support of ESA citizen-suit claim).

Indeed, in a recent filing in another NWEA matter in the Western District of Washington, EPA itself relied on some of these cases to essentially make the very point NWEA is making here about why such expert testimony might be needed. EPA was attempting to argue that somehow Clean Water Act citizen suits lend themselves more to administrative records than ESA citizen suits, which, as EPA itself argued, frequently require the submission of expert declarations (including from "wildlife biologists") to help determine "if, and how, a federal action might affect endangered species." EPA argued:

> In such [ESA section 7 citizen suits], courts have considered declarations from wildlife biologists addressing the potential effects of federal actions on endangered species. *Kraayenbrink*, 632 F.3d at 497-98; *see also Nat'l Wildlife Fed'n v. FEMA*, No. C11-2044-RSM, 2014 WL 5449859, at *9 (W.D. Wash. Oct. 24, 2014). **That kind of evidence bears upon the highly technical questions of if, and how, a federal action might affect endangered species**, taking into account considerations such as migration patterns, food webs, and habitats.

*Nw. Env't Advocs. v. U.S. Env't Prot. Agency*, Case No. 2:21-cv-1637-BJR (W.D. Wash. Feb. 13, 2025), ECF No. 42 at 11 (emphasis added).[2] This is exactly NWEA's point. This Court's task of

---

[2] NWEA does not agree with the distinction EPA makes between the two statutes. The ESA's citizen-suit provision is identical to the Clean Water Act's in all relevant respects. *Compare* 16 U.S.C. § 1540(g)(1)(C) *with* 33 U.S.C. § 1365(a)(2). Neither citizen-suit provision mentions an "administrative record," and neither imposes any limit on the scope of review. Nevertheless,

4   JOINT STATUS REPORT

determining whether EPA is violating its independent duty to ensure against jeopardy to listed salmonids is a fact-intensive one, involving the biological health of the species, the current state of decline of their environment, and the effect (if any) of EPA's Cold Water Refuge Plans to protect those species from extinction.

NWEA has explained to Defendants that it seeks to use experts to, among other things, discuss the flaws in the Cold Water Refuge Plans—the very documents that Defendants claim will mitigate against NMFS's clear finding of jeopardy to ESA-listed species from Oregon's 20°C migration standard—those Plans' many unsupported underlying assumptions, and how those Plans fail to prevent jeopardy to the listed species against the backdrop of decades of agency failure. The Columbia Plan alone is 216 pages long with 23 appendices and the Willamette Plan is 189 pages. These Plans include discussion of numerous technical issues; of equal importance, they leave out discussion of factors that are critical to ensure protection of listed salmonids. This is exactly what experts will help explain.

Notwithstanding this Court's ruling, EPA appears to be stuck in the framework of APA record review claims, with a focus on limiting the Court's review to only documents the agency has seen before, and only documents that pre-date the issuance of the 2015 Biological Opinion. But again, this is not an APA claim, so the notion that this Court cannot review anything "post-decisional" or anything not "before the decision-maker at the time of the decision" is simply wrong. There is no "decision" challenged in Claim Two; rather Claim Two is an allegation that EPA has *failed* to ensure against jeopardy.

---

NWEA cites to the position EPA took in that case as evidence that even EPA acknowledges the need for expertise in judicial review of claims like the one at issue here.

To this point, below, EPA makes several related arguments tied to a cut-off date for judicial review of 2015, when NMFS's biological opinion was issued. All of these arguments are misplaced in the context of NWEA's claim against EPA, as it was not EPA, but rather NMFS, that issued the 2015 biological opinion (*see* NWEA's Claim One). Instead, Claim Two against EPA alleges that EPA's actions before and after the biological opinion's issuance have failed to ensure against jeopardy to listed species. And because this is not an APA claim challenging a final agency action by EPA, there is simply no basis to cut off NWEA's use of any information that post-dates that 2015 biological opinion.

EPA's reliance on the Ninth Circuit's ruling in *Center for Biological Diversity v. Environmental Protection Agency*, 847 F.3d 1075 (9th Cir. 2017), is unavailing. The court's reference to an "ongoing violation" of the ESA in that case pertained to the court's analysis of whether the statute of limitations was applicable to a *procedural* "failure to consult" claim under the ESA. 847 F.3d at 1087. The court determined that because the plaintiffs in that case could have brought an ESA failure to consult claim within six years of various EPA pesticide registration decisions, the current challenge was untimely. But again, here, Claim Two does not challenge any particular EPA decision, and certainly not one that occurred in 2015. The case is simply irrelevant.

At bottom, and remarkably, EPA seems to be arguing that NWEA does not have an ESA claim against EPA at all, relying on *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). This argument is not only a surprise to NWEA, it is meritless.[3] NWEA has a valid claim

---

[3] If the Court is inclined to accept EPA's arguments on this point or otherwise limit NWEA to material dating to 2015, NWEA respectfully requests the opportunity to submit a short surreply on its motion to clarify the scope of review. NWEA is learning of EPA's arguments and the authority EPA contends supports them on the day of filing this Joint Status Report, despite repeated requests to EPA to clarify its position, and despite the fact that EPA could have made these arguments in response to NWEA's motion or perhaps even in a separate motion to dismiss.

against EPA for failing to ensure against jeopardy, which is an obligation EPA has irrespective of the biological opinion issued by NMFS. EPA has an independent obligation to ensure that its actions do not jeopardize listed species. 16 U.S.C. §1536(a)(2). As the Supreme Court noted, "[t]he action agency is technically free to disregard the Biological Opinion and proceed with its proposed action, but it does so at its own peril." *Bennett v. Spear*, 520 U.S. 154, 170 (1997). The inverse is also true; EPA cannot avoid liability under the ESA by hiding behind an inadequate biological opinion issued by NMFS. *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d1101, 1127–28 (9th Cir. 2012) ("In particular, an agency cannot meet its section 7 obligations by relying on a Biological Opinion that is legally flawed or by failing to discuss information that would undercut the opinion's conclusions."). Nothing in the *Norton* case has any bearing on the scope of judicial review for this citizen-suit claim.

While NWEA's position is that it should be entitled to use all of the discovery tools available to it, NWEA does not seek to do so in this case. In the interest of judicial economy, NWEA seeks only to use discovery pertaining to experts. To that end, NWEA proposes to follow the process provided for in Rule 26. That is, NWEA requests that the Court set a deadline for expert disclosures, which per the rule will be accompanied by written reports. NWEA also proposes a deadline for rebuttal reports, and a deadline by which any depositions of experts must be completed. This is exactly what the rules contemplate. NWEA is not assuming depositions of all experts will take place, but rather building in time in the event that either Party wants to depose one or more experts upon seeing their written reports. For its part, NWEA only intends to take depositions if EPA chooses to rely on new expert reports not included in the cache of documents that EPA has called the "administrative record." If EPA chooses not to do so, then, at least from NWEA's perspective, depositions would be unnecessary.

7   JOINT STATUS REPORT

In light of the above, NWEA proposes the following, subject to final conferral with experts about their specific availability:

- Deadline for expert disclosures/exchange of reports: 60 days following the Court's issuance of a final case management schedule.

- Deadline for rebuttal expert reports: 60 days following initial exchange of reports.

- Deadline for all depositions: 60 days following rebuttal reports.

- Deadline for close of expert discovery: 30 days following all depositions, building in time for supplemental reports if necessary. *See* Fed. Rule. Civ. Pro. 26(e)(2).

Finally, although the Parties have reached agreement on the process for briefing summary judgment and NWEA's renewed motion to supplement NMFS's administrative record, NWEA does not agree with Defendants' suggested page limitations. Rather, NWEA requests that the Parties be limited to the page allocations provided by the Local Rules.

**Defendants' Position**

In its February 11, 2025, Order, the Court stated "although [it had] concluded that the scope of review of Plaintiff's ESA claim [against EPA, Count II of the Second Amended Complaint] is not limited to the administrative record, the parties have not adequately addressed whether and to what extent discovery is allowed in this case." Dkt. 71 at 17. It therefore ordered the parties to "confer and address this issue in a joint filing no later than 30 days after the issuance of this Opinion & Order." *Id.* The Court further directed the parties to "file a joint status report and proposed case schedule addressing Plaintiff's *proposed* discovery, dispositive motions, and Plaintiff's motion to supplement the administrative record." *Id.* at 18 (emphasis added).

The parties held a phone conference on February 21, 2025, and have exchanged views on these issues during the weeks of February 24, 2025, and March 3, 2025. They disagreed as to

8   JOINT STATUS REPORT

whether the Court determined in its Order that discovery of any kind, much less expert witness testimony, is appropriate. Defendants' view is that the Court has not done so and has asked the parties to provide more information on this topic. As noted above, the Court stated that the parties had not "adequately addressed *whether* and to what extent discovery is allowed in this case." Dkt. 71 at 17 (emphasis added).

In response to a question from Defendants on February 28, 2025, Plaintiff declined to provide information as to why the Administrative Record is insufficient or the general subject matters on which Plaintiff plans to have its expert witness opine. Defendants requested this information to allow them to understand Plaintiff's position on the need for expert reports. Plaintiff has said it plans to ask for the opportunity for opening, rebuttal and, potentially, supplemental expert reports. Plaintiff has additionally said it wishes to take EPA's expert's deposition.

Defendants believe it is inappropriate to allow for expert witness reports or expert witness depositions here. EPA's November 30, 2023, Administrative Record, which contains 98 documents and encompasses 2709 pages, is more than adequate for the Court's review. *Cf. Ecological Rights Foundation v. FEMA*, 384 F. Supp. 3d 111, 1119 (N.D. Cal. 2019) (finding in citizen suit case that "the material in the administrative record is sufficient to resolve the cross-motions without resort to external materials"). The most appropriate path forward is to order the parties to file summary judgment briefs and their briefs concerning supplementation of NMFS's Administrative Record, with no discovery. Dkt. 60 at 30-34 (Plaintiff, not addressing issue); Dkt. 70 at 26-35 (same).

Judicial authority supports this path. Courts routinely deny requests for discovery, even where the Court has found that review is not, in principle, limited to the Administrative Record. This is especially so where the moving party has not articulated a basis for allowing discovery. As

9   JOINT STATUS REPORT

the court stated in *Sierra Club v. McLerran*, 2012 WL 5449681 (W.D. Wash. 2012), the extent to which the Administrative Record should be supplemented is decided "on a case by case basis." *Id.* *3. Following this approach, in *N.W. Environmental Advocates v. EPA*, the court denied the Plaintiff a request for depositions, and allowed for requests for the production of documents, "narrowed to focus on documents that will help the Court assess whether relief should be granted." *N.W. Env'l Advocates v. EPA*, No. 3:21-cv-01136-HZ, 2022 WL 15331465, *5 (D. Or., Oct. 24, 2022) (citing *Xerces Society*, No. 3:13–cv–1103–MO (Dkt. No. 25) and *Stop B2H Coal.* at 1118-19); *see also id.* at *8 ("the party seeking to supplement the record must adequately justify inclusion of the documents in the record."). Courts have also found that it would be one thing to find that review is not limited to the administrative record under *Kraayenbrink*, and quite another to allow for intrusive discovery. *Sierra Club v. McLerran*, No. 11-cv-1759, 2012 WL 5449681, at *2 (W.D. Wash. Nov. 6, 2012) (finding in citizen suit case that "it is a far cry to state that [*Kraayenbrink*] require a district court to engage in *de novo* review of the record or that the APA's standards are inapt guidelines"); *see generally, Ctr. for Biol. Div. v. Wolf*, 447 F. Supp. 3d 965, 970 (D. Ariz. 2020). "Following *Kraayenbrink* to allow supplementation of the record would be controversial, and *allowing discovery would be more controversial still*." *WildEarth Guardians v. U.S. Forest Service*, No. 10-cv-385, 2011 WL 11717437, *1 (D. Ariz. 2011) (emphasis added).

The Orders and cases that Plaintiff cites do not help it. As explained below, Plaintiff now says it intends to offer testimony on the content of the 2020 and 2021 Cold Water Refugia Plans. *Supra* at 5. But the Cold Water Refugia Plans post-date EPA's 2016 decision to implement the 2015 BiOp and RPA by *five years*. *See infra*, n. 4. Moreover, Defendants assume that in referring to "plans," plural, they are referencing not only the 2021 Cold Water Refuge Plan that EPA as to the Colombia River, but also one written by the Oregon Department of Environmental Quality in

10  JOINT STATUS REPORT

2020. Allowing expert reports on the Cold Water Refuge Plans would allow Plaintiff to second guess EPA's decision to implement the 2015 BiOp and RPA using post-decisional and irrelevant material. *Id.* The smattering of Orders that Plaintiff cites involve cursory analysis and fail to grapple with that issue. And, fundamentally, the fact that expert witness testimony was permitted in another case does not mean it is warranted here. *See infra*, n. 4; *National Wildlife Federation v. FEMA*, No. 11-cv-2044, 2014 WL 5449859, *8-*9 (W.D. Wash. Oct. 24, 2014) (case cited by Plaintiff, finding expert witness reports were "simply not relevant" because "the record speaks for itself.").

Moreover, in *Northwest Environmental Advocates v. EPA*, No. 2:21-cv-1637 (W.D. Wash.) (ECF No. 42), EPA said at an earlier part of the brief not quoted by Plaintiff, "the precedential value of [*Kraayenbrink* and *Washington Toxics*] is dubious[,] even in the [ESA] context where they arose." *Id.* at 10. EPA made clear that "[g]iven the cursory reasoning of *Washington Toxics* and *Kraayenbrink*, courts within the Ninth Circuit have treated these cases with skepticism even in the context of ESA suits" and "a parade of decisions from [the Ninth] Circuit and others instead hew to the well-established rule that record review is the norm in ESA cases." *Id.* EPA prefaced its statement about the ESA and CWA by saying "[w]hatever value Washington Toxics *and* Kraayenbrink *have in ESA cases*, there is good reason not to extend those shaky holdings to the [CWA] constructive submission context." *Id.* (emphasis added). EPA merely stated that in ESA cases, "courts *have considered* declarations from wildlife biologists . . . ." *Id.* (emphasis added). EPA clearly did not endorse the use of expert witness testimony in ESA cases in *Northwest Environmental Advocates v. EPA*.

Allowing for as many as six expert witness reports (3 each – opening, rebuttal and, potentially, supplemental expert witness reports) and several depositions, as Plaintiff proposes,

would be all the more problematic where the Plaintiff has not articulated a basis for such discovery. Dkt. 60 at 30-34 (Plaintiff, not addressing issue); Dkt. 70 (same). Allowing Plaintiff to do so would impose unnecessary expenses on Defendants, inject post-consultation information into these proceedings and allow the Plaintiff to present information that the agency has never itself seen before–then ask the Court to second guess the agency on the basis of that post-decisional material. *Cf. Center for Biological Diversity v. EPA*, 847 F.3d 1075, 1087, 1090-91 (9th Cir. 2017) (failure to comply with consultation requirement in ESA Section 7 is not a "continuing violation."). Here, Plaintiff is proposing that it be allowed to submit information that post-dates EPA's 2016 decision to implement NMFS's 2015 BiOp[4] by *nine years*. Plaintiff's proposal is in significant tension with the APA standard of review, which Plaintiff agrees applies here, and instead would constitute *de novo* review.

Under ESA Section 7, the obligation for federal action agencies (here, EPA) is that they "shall, *in consultation with*" the consulting agencies (here, NMFS) "insure that *any action* authorized, funded, or carried out by such agency is not likely to jeopardize the continued existence of any" ESA-listed species. 16 U.S.C. § 1536(a)(2). EPA did so by consulting with NMFS. That consultation process culminated in NMFS' 2015 BiOp. EPA's "action" was to decideto implement the 2015 BiOp's RPA in 2016. An action agency's independent Section 7 obligation is not one that can result in an ongoing violation, as Plaintiff insinuates. *Ctr. for Biological Diversity v. EPA*, 847 F.3d at 1091.

Nor does the ESA citizen-suit provision allow a court to review an agency's day-to-day implementation of its programs. Indeed, just as the Section 7 requirement is tied to the impacts of

---

[4] To be clear, Defendants do not contend that the cutoff is the date NMFS issued the 2015 BiOp, as Plaintiff contends, *supra*.

an agency's proposed action, the corresponding judicial review of whether an agency has complied with that duty is limited to that agency's action. Plaintiff's interpretation would "ultimately" require this Court, and others, "to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 66–67 (2004). However, the "prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the [Administrative Procedure Act]." *Id.* at 67.

If Plaintiff is concerned with whether an agency has failed to implement elements that were counted on as part of a biological opinion, the statute and the regulations already provide an avenue for judicial review of such a concern. After consultation is complete, the ESA regulations contain a mechanism for reinitiation of that consultation based on the advent of "new information" post-dating the consultation. 50 C.F.R. § 402.16(a)(2) (reinitiation required "[i]f new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered); *see also id.* § 402.16(a)(3). However, for whatever strategic reason, Plaintiff dropped its claim from the First Amended Complaint that EPA failed to reinitiate consultation when it filed the Second Amended Complaint. It should not now be able to circumvent the statutory and regulatory scheme by introducing post-decisional "new information" in expert reports. *Id.* § 402.16(a)(2).

Accordingly, the Court should accordingly adopt the following schedule:

(a) April 15, 2025: Defendants lodge and serve the revised NMFS Administrative Record, containing documents the parties have agreed to add in negotiations;
(b) April 24, 2025: Plaintiff files its Motion for Summary Judgment and memorandum of law in support (limited to 35 pages);
(c) April 24, 2025: Plaintiff also files its renewed Motion to Supplement NMFS's Administrative Record (limited to 15 pages);
(d) June 5, 2025: Defendants file their Cross-Motion for Summary Judgment and memorandum of law in support (limited to 35 pages);

13 JOINT STATUS REPORT

(e) June 5, 2025: Defendants file their response to Plaintiff's renewed Motion to Supplement NMFS's Administrative Record (limited to 15 pages);

(f) July 3, 2025: Plaintiff files its combined response to Defendants' Cross-Motion for Summary Judgment and reply in support of its Motion for Summary Judgment (limited to 20 pages);

(g) July 3, 2025: Plaintiff files its reply in support of its Motion to Supplement NMFS's Administrative Record (limited to 10 pages); and

(h) July 31, 2025: Defendants file their reply in support of Motion for Summary Judgment (limited to 20 pages).[5]

To the extent that the Court nevertheless disagrees, and finds that that expert witness reports and depositions are appropriate, the Court should allow Defendants the opportunity to challenge any report that Plaintiff submits, and adopt the following schedule:

(a) May 12, 2025: Deadline for the parties to exchange opening expert witness reports, if any;

(b) July 11, 2025: Deadline for the parties to exchange rebuttal expert witness reports;[6]

(c) September 9, 2025: Deadline for expert witness depositions;

(d) September 16, 2025: Deadline for the parties to provide notice of their intent to file a *Daubert* motion or motion *in limine*;

(e) October 17, 2025: Deadline for *Daubert* motions or motions *in limine* concerning the appropriateness or admissibility of any expert witness report or testimony.

(f) November 7, 2025: Deadline for the Parties' responses to file any *Daubert* motion or motion *in limine*;

(g) November 21, 2025: Deadline for reply briefs, if any, in support of a *Daubert* motion or motion *in limine*.

This schedule would ensure that any discovery is strictly limited to information that would be admissible and relevant to the judicial inquiry before the Court. That inquiry is whether, in light of NMFS's 2015 BiOp, EPA's 2016 decision to implement the reasonable and prudent alternatives in the 2015 BiOp, was arbitrary and capricious. 5 U.S.C. § 706(a)(2)(A); *N.w. Environmental Advocates v. EPA*, 920 F. Supp. 2d 1168, 1176 (W.D. Wash. 2013) (party may only

---

[5] Defendants request that the Court bifurcate summary judgment briefing, with briefs limited to discussions of the merits, not remedy issues.

[6] Plaintiff has additionally requested the option of filing supplemental expert witness reports after the parties file their rebuttal reports. The Court should reject that request – at most the parties should be limited to two reports each; supplemental expert reports should only be permitted after a party requests and receives leave from the Court.

14  JOINT STATUS REPORT

"supplement the record with evidence that is *relevant to the question of whether relief should be granted*.") (emphasis added) (citing *WildEarth Guardians v. FEMA* , No. 10-cv-9863, 2011 WL 905656, at \*3 (D. Ariz. March 15, 2011); F.R.E. 401 (evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action").

As such, the Court should limit any expert report submitted or expert testimony provided now – nine years after EPA chose to implement the reasonable and prudent alternatives in the 2015 BiOp – to the information that was or could have been before EPA at the time of its September 2016 decision to implement the reasonable and prudent alternatives in the 2015 BiOp. *Id.* Any later-developed studies, information, or data could not inform whether EPA's decision was arbitrary and capricious.[7]

Finally, the Parties should be ordered to meet and confer, and propose within 14 days of the Court's decision on any *Daubert* motion or motion *in limine* a schedule for their motions for summary judgment and Plaintiff's motion to supplement NMFS's Administrative Record.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division

---

[7] EPA included documents post-dating its decision to implement the 2015 BiOp in its Administrative Record out of an abundance of caution and in light of Plaintiff's incorrect argument that its ESA Section 7 "action agency" claim, Count II, concerns an "ongoing" violation. Dkt. 45-1 at 1. (These include materials concerning EPA's Cold Water Refugia plan for the Colombia River. *See, e.g.*, EPA AR 423-1982. To date, even with new information, caselaw and arguments provided the morning of May 13, 2025 to Defendants, Plaintiff has not explained why the documents already in EPA's Administrative Record are inadequate for the Court's review.) The Ninth Circuit has rejected Plaintiff's theory, and made clear that Section 7 claims accrue when the obligation first occurs, and they do not repeat every subsequent day as a new discrete act. *Ctr. for Biological Diversity v. EPA*, 847 F.3d at 1091.

15  JOINT STATUS REPORT

    */s/ J. Brett Grosko* (with permission)
J. BRETT GROSKO
*Senior Trial Attorney* (Md. Bar)
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7369
Washington, DC 20044-7369
Ph: 202-305-0342/Fax: 202-305-0275
brett.grosko@usdoj.gov

*Of Counsel*

Ryan Couch
NOAA Office of General Counsel

Christopher Len
EPA Region 10, Office of the Regional Counsel

Eleanor Garretson
EPA Office of General Counsel

    /s/ *Allison LaPlante*
ALLISON LAPLANTE, OSB No. 023614
Attorney at Law
333 NE Russell St. #200
Portland, OR 97212
Tel: (503) 351-1326
allison.laplante@gmail.com

LYDIA DEXTER, OSB No. 233151
Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR  97219-7799
Tel: (503) 768-6830
lydiadexter@lclark.edu

BRYAN TELEGIN, OSB No. 105253
Telegin Law 175 Parfitt Ave., SW Suite N270
Bainbridge Island, WA 98110
Tel: (206) 453-2884, Ext. 101
bryan@teleginlaw.com

16  JOINT STATUS REPORT

*Attorneys for Plaintiff Northwest Environmental Advocates*

17  JOINT STATUS REPORT